## Woods, Appellant, *v.* Pleasant Hills Motor Company.

Argued September 28, 1972.

*Murray S. Love,* with him *Howard F. Messer,* and *Sikov and Love,* for appellant.

*Randall J. McConnell, Jr.,* with him *Dickie, Mc-Camey & Chilcote,* for appellee, Ford Motor Co.

*George M. Weis,* and *Weis & Weis,* for appellee, Pleasant Hills Motor Company.

OPINION BY MR. JUSTICE MANDERINO, October 3, 1973:

Charles D. Woods was killed on July 14, 1965, when a 1965 Ford truck which he was driving failed to negotiate a curve at the bottom of a hill, left the paved portion of the highway, collided with a pole, crossed over to the other side of the highway, ran into a hillside, and overturned.

The deceased was operating the truck in the regular course of his employment for the Charles Bluestone Company, Inc. The truck had been purchased on February 15, 1965, from Pleasant Hills Motor Company. Suit was filed by Marie P. Woods, as administratrix of the estate of the deceased, her husband, against the seller of the truck, Pleasant Hills Motor Company, and the manufacturer of the truck, Ford Motor Company. Subsequently, the two original defendants filed a complaint against the deceased's employer, Charles Bluestone Company, Inc.

The jury returned a verdict against both Pleasant Hills Motor Company and Ford Motor Company in the amount of $52,515, under the wrongful death act and $37,485, under the survival act. A compulsory nonsuit had previously been granted as to Charles Bluestone Company, Inc., the additional defendant, from which no appeal has been taken. Post-trial motions by the defendants were denied. On appeal to the Superior Court, the judgments were reversed and a new trial awarded to both defendants. *Woods v. Pleasant Hills Motor Co.,* 219 Pa. Superior Ct. 381, 281 A. 2d 649 (1971). The petition of the appellant administratrix, Marie P. Woods, for allowance of appeal was granted.

Suit in this case was brought on alternate theories of common law negligence and strict liability under section 402(a) of the Restatement of Torts, Restatement 2d, Torts, §402(a) (1965). The appellant contended that an alleged defect in the braking mechanism of the truck caused the brakes to malfunction, resulting in the accident. Both theories were based on the failure of the Ford Motor Company to properly manufacture or assemble the braking mechanism and on the failure of Pleasant Hills Motor Company to inspect or properly inspect the fitting on the brake mechanism that was alleged to have been defective.

The alleged defect concerns the proper functioning of an air supply line which is a part of the truck's braking system. The appellant contended that the air supply line between the reservoir tank and the foot valve (brake pedal) had become disconnected due to insufficient tightening of a nut. Had the nut been properly tightened, it would have caused a ferrule (copper ring) to clamp in a pinching manner around the hollow copper end of the air supply line. This would have properly secured the line. The tightening of the nut and the clamping of the ferrule around the copper line, according to the appellant, would have caused a crimping of the copper line. The clamped ferrule on the crimped copper line would make it most difficult to remove the ferrule from the copper line by hand. The appellant's evidence indicated that the line had never been crimped, from which it could be inferred that the appropriate nut had never been tightened sufficiently to cause the ferrule to clamp around the line and hold it securely in place. This failure made it possible for the copper line to become disconnected, causing a loss of air from the air lines which in turn caused the brakes on the truck to fail. There was evidence that at the time of the accident or immediately prior thereto, a swishing wind sound was heard coming from the truck. The evidence established that such a sound would be

made if the air supply line became disconnected causing a sudden loss of air pressure in the braking system. There was also evidence that after the accident the ferrule was removed from the line by hand in a very easy manner.

The Superior Court's reversal of the judgments in favor of the appellant was based primarily on its conclusion that certain photographs admitted into evidence at the appellant's request should not have been admitted because they had no probative value. These photographs were photographs of the copper portion of the air supply line which would have been crimped if the ferrule around the line had been properly clamped around it by the tightening of the nut on the ferrule. The photographs did not show any crimp in the copper line.

The photographs were taken at different times several months after the accident. Before the photographs were taken various changes were made on the truck. Because of the changes, the Superior Court concluded that the photographs were not relevant to show the condition of the truck at the time of the accident.

We agree that changes took place on the truck between the time of the accident and the taking of the photographs. Some dismantling took place and certain parts were removed. None of the changes, however, concerned the copper portion of the air supply line depicted in the photographs. The photographs were offered for the purpose of showing the lack of a crimp in the copper line.

The law does not require that every object depicted in photographs remain unchanged from the time of an accident until the photographs are taken. *See Vanic v. Ragni*, 435 Pa. 26, 254 A. 2d 618 (1969) ; *Nyce v. Muffley*, 384 Pa. 107, 119 A. 2d 530 (1956). If this were the rule, it would be impossible to ever use a photograph taken after the time of an accident. Of necessity

there will always be changes in that which is depicted in a photograph taken after an accident. Even one minute after an accident, a vehicle does not look as it did at the time of the accident. Not only are there changes in the vehicles in such photographs, but there can be extensive changes in the background. The leaves on the trees may have been green at the time of the accident and a reddish orange at the time photographs are taken. Changes occurring to objects depicted in photographs are not important *unless* the changes occurred to objects that are relevant to a determination of the disputed issues.

In this case, the photographs were not introduced to prove any condition of any portion of the truck as it existed at the time of the accident *except* for the copper line which the appellant claimed had never been properly crimped by a tightening of a nut. For this reason, changes made to the cab or to the bed of the truck or to any other portion of the truck, between the accident and the time the photographs were taken, are totally irrelevant. The important point is that there is no evidence in the record from which any inference can be drawn that the crucial portion of the copper line which was depicted in the photographs as uncrimped, had in any way been changed. In fact, the appellant, as pointed out by the trial court, presented evidence establishing that those persons who had custody of the truck from the time of the accident until the photographs were taken did not in any way alter the crucial portion of the copper air supply line. One witness, Dale Fenchel, testified that several months after the accident he spent three hours inspecting the truck and all of the brake lines. He testified as an expert that there was no evidence that indicated that any changes had been made so far as the copper portion of the air supply line was concerned. This same witness looked at the photographs and testified that the condition of the air sup-

ply line depicted in the photographs was identical to the condition of the line at the time he inspected the truck.

Moreover, it is important to focus on the alleged evidence depicted in the photographs so far as the uncrimped copper line is concerned. Certain physical facts may be allowed to speak for themselves, if they are readily understandable by a jury. For example, if one party claims that a windshield on a vehicle was not cracked at the time of an accident, and the other party claims that it was cracked, the party claiming the lack of a crack could take a photograph years after an accident and the jury could, without any assistance, observe the photograph to determine whether or not there was any crack in the windshield. No matter what the time lapse between the accident and the taking of the photograph, an inference would certainly be reasonable that no change occurred, since it is almost impossible for a cracked windshield to become uncracked. The reverse, of course, would not be true. If the party contending that the windshield was cracked at the time of the accident, presented a photograph showing the windshield as cracked, an inference that the cracked condition existed at the time of the accident would not be reasonable because it would have been possible for the windshield to have become cracked between the time of the accident and the time the photograph was taken. The uncracking of a cracked windshield may be possible in some expert's laboratory with the use of extreme skill and the application of special techniques. To believe that such a feat occurred, however, would not be reasonable in the absence of any evidence indicating such an extraordinary accomplishment.

We are confronted with a similar situation in this case. Had the appellant claimed that the photographs depicted a crimped copper line, there would be a question as to whether the line was crimped at the time of

the accident or became crimped after the accident. Here, however, the appellant is claiming that the photographs depict an *uncrimped* copper line. Whatever the time lapse between the accident and the taking of the photographs, a jury could reasonably infer that the line was never crimped. Had the copper line been crimped as the result of the tightening of a nut on the ferrule, the evidence of the crimping would remain many months after the accident. Copper lines do not uncrimp themselves even when exposed to sun, snow, or sleet—and there was no evidence presented of any change by tampering. We can only conclude that the photographs were properly admitted into evidence to show the condition of the copper line at the time of the accident, even though the pictures were taken after the accident.

The Superior Court also concluded that Wilbert Messmer, one of the appellant's experts, should not have been permitted to testify concerning the cause of the accident because he stated that his testimony was in part based on the condition of the copper line depicted in the photographs. Since, as we have held, the photographs were properly admissible, it was also proper for this expert to base his testimony on his observation of the copper line depicted in the photographs.

The Superior Court also held that certain testimony of Dale Fenchel, another expert witness, who testified for the appellant, could not properly be used because he did not give a definite opinion. Even assuming that Fenchel did not give a definite opinion as to causation, the record is, nonetheless, sufficient. Fenchel was not the only expert witness for the appellant. The testimony of Wilbert Messmer, who testified as to causation, for the appellant, was sufficient to establish the appellant's prima facie case on the issue of causation. We have, nonetheless, examined the testimony of Dale Fenchel and cannot conclude that he did not give

a definite opinion. During the direct examination of Fenchel, he testified extensively concerning his examination of the copper line on the truck, the lack of any crimping on the line and, thereby the improper connection of the air supply line. He explained completely what would happen if the air supply line became disconnected. During cross-examination he testified as follows: "Q. Now, you knew this truck has been in an accident? A. Yes, sir. Q. And the damage that you saw, particularly on the front end, was evidence of a severe jolt or damage? A. Yes, sir. Q. Severe enough for that line to pop out? A. Possible, possible. Q. Possible? This truck having been in an accident, you don't know what caused the line to pop out? A. Now, don't— THE COURT: Speak up, Mr. Fenchel. A. (The witness) It is a—no, it don't, sir. BY MR. WEIS: Q. All right. It could have been a twist of the frame, or hitting something, or the accident, itself? A. Possible."

In the above testimony, Fenchel is not giving *his* *opinion,* he is only agreeing that counsel's speculation is a possibility. Fenchel gave a definite opinion later during the cross-examination, when he testified as follows: "Q. Were you in court yesterday and did you hear Mrs. Galusky, I believe it was, testify to the swishing sound which she heard as this truck went past her place of business? A. Yes, I was, sir. Q. What if anything does that indicate to you with regard to this braking system? A. Well, in a truck, that would be the only thing I would know it would be to make that noise, would be air leaking out. Q. Would you conclude from that testimony, if Mrs. Galusky is correct, of hearing that sound, that this broke loose at that moment? A. I suppose it could have. Q. Could have? MR. McCON-NELL: That is objected to as not being proper under the laws. It has to be stricken, and the jury instructed to disregard his answer as not definite enough. THE COURT: The objection is sustained. You either have

an opinion that did, or didn't; not that it could have. By Mr. Kyle: Q. Give us your opinion. A. I would say it did, sir. Q. You would say it did A. Yes, sir. Q. Now, when this connection were to break loose, or come loose, you would have almost immediately you would have no braking power. Is that right? A. Yes, sir."

In *Smail v. Flock*, 407 Pa. 148, 180 A. 2d 59 (1962), we said: "[E]xpert testimony, to have any evidentiary value, must state with some positiveness that a given state of affairs is the result of a given cause. It is not enough to say that something *could* have happened. Anybody can guess. Expert testimony must assert that it is the professional opinion of the witness that the result in question came from the cause alleged." *Id.* at 152-53, 180 A. 2d at 61.

Fenchel's opinion was definite that the connection broke loose at the time the swishing sound was heard and was, therefore, proper testimony for the jury's consideration.

Another reason given by the Superior Court for the grant of a new trial concerned a commentary by the trial judge about a witness's prior testimony.

Herbert Richardson, a police officer, testified for appellant as follows: "Q. What did you determine in your examination of the skid marks? A. That these were fresh skid marks, due to the fact that at the heaviest point of contact of the tire against the asphaltic road I was able to remove rubber from the asphalt where the tire was applied, the brake was applied and the tire pressure was put against the road."

Later in the trial, Dale Fenchel, one of the appellant's expert witnesses, was being cross-examined as follows: "Q. Assuming the truck was not overloaded and assuming that he laid down enough rubber to make clear marks of a hundred and fifty-seven feet— A. Right. Q. Would you not conclude from that that he had good brakes? A. Right."

Although Fenchel had answered the question, appellant's counsel objected, arguing that there had not yet been any showing that the skid marks came from the application of brakes. A discussion followed before the jury, during which the trial court stated: "According to my notes and my recollection, gentlemen, no one, no witness testified that the rubber, the skid marks, came from braking. Officer Richardson said that they were fresh because he was able to remove rubber, and the marks followed the curve of the road."

Following a recess for the purpose of reviewing the police officer's testimony, appellant's objection was overruled and the judge instructed the jury as follows: "After checking the record it was found there was reference made in a question by [appellant's counsel] to the witness and an answer by the witnesses to [appellant's counsel's] question to 'brakes', and that is all we are going to say about it, and you are not to take from this explanation to you any undue emphasis to that portion of the testimony. You will recall all the testimony."

Defense counsel requested a side bar conference in which the trial court was asked to instruct the jury further about the police officer's testimony. The request for further instruction was denied.

The cross-examination of Fenchel continued and the trial court permitted counsel to repeat the original question put to Fenchel. Fenchel gave the same answer concerning the brakes.

Concerning the above incident, the Superior Court concluded that: ". . . since it involved such a critical issue, whether there was a brake failing, we cannot ignore it completely, particularly in light of the emphasis resulting from the insistence of the trial judge of the correctness of his recollection. Under the circumstances, we must conclude that appellant's cause was prejudiced to some extent as a result of the unfortunate discussion in open court before the jury."

We must disagree with the Superior Court's conclusion for several reasons. The two comments by the trial judge, quoted above, are the only comments on this matter, made by the trial judge, in the presence of the jury. We cannot read these comments as an "insistence of the trial judge of the correctness of his recollection." In addition, the trial court specifically cautioned the jury during the charge that their recollection of the facts was controlling and not the recollection of the counsel or the judge. This incident does not warrant a new trial. *See Whitfeld v. Reading Co.*, 380 Pa. 566, 112 A. 2d 113 (1955); *Yago v. Pipicelli*, 343 Pa. 222, 22 A. 2d 699 (1941).

We have also considered questions raised concerning the qualification of expert witnesses, the hypothetical questions asked of the expert witnesses, and the weight of the evidence. We find no merit in these issues justifying the grant of a new trial.

An issue is also raised in this appeal by appellee Pleasant Hills Motor Company, which was not reached in the Superior Court since a new trial was awarded. Appellee Pleasant Hills, contends that the trial court erred by refusing its request for the following instruction: "In the event of a verdict against Pleasant Hills Motor Company there must be a verdict over in favor of Pleasant Hills Motor Company and against Ford Motor Company."

Appellee Pleasant Hills Motor Company relies on *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A. 2d 368 (1951), and *Burbage v. Boiler Engineering and Supply Co.*, 433 Pa. 319, 249 A. 2d 563 (1969).

The requested charge assumed that under no theory of the case as submitted to the jury, could Pleasant Hills Motor Company be primarily liable. That assumption, however, is not valid. One of the theories properly submitted to the jury, involved the negligence of appellee Pleasant Hills Motor Company for unrea-

sonable conduct in failing to inspect or improperly performing an inspection of the truck. Under that theory the verdict against Pleasant Hills Motor Company would not be based on a vicarious liability, but on the negligent conduct of the appellee, Pleasant Hills Motor Company. The requested charge, which was refused, would, therefore, not have been a proper charge.

The order of the Superior Court, granting a new trial is reversed and the judgments entered in the trial court are reinstated.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Mr. Justice NIX concurs in the result.

Mr. Justice EAGEN dissents.

Mr. Justice POMEROY dissents and would affirm the grant of a new trial on the basis of the opinion of Judge MONTGOMERY speaking for a unanimous Superior Court.