Woodrow F. RHOADS, Administrator of the Estate of Mary Rhoads, Deceased and Woodrow F. Rhoads, Individually

v.

FORD MOTOR COMPANY, a corporation, Appellant,

v.

Woodrow F. RHOADS, Individually.

No. 74–1626.

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1975.

Decided April 30, 1975.

Randall J. McConnell, Jr., John Edward Wall, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellant.

John E. Evans, Jr., Evans, Ivory & Evans, Pittsburgh, Pa., for appellees Woodrow F. Rhoads and others and Gilbert E. Caroff, Johnstown, Pa., for appellee Woodrow F. Rhoads.

## OPINION OF THE COURT

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

ALDISERT, Circuit Judge.

In this diversity action governed by Pennsylvania law, Ford Motor Company appeals a judgment in strict liability entered against it and in favor of Woodrow F. Rhoads, individually and as a representative under the survival and wrongful death statutes. The jury found that the collision of Rhoads' Ford automobile with a guard rail was caused by "a dangerously defective condition" of the car and that the condition existed when Ford sold it. The jury also found Rhoads negligent in the car's operation. The district court entered judgment in favor of Rhoads both as plaintiff and as third-party defendant.

Ford's many contentions on appeal essentially cluster around the jury's finding that Rhoads was also negligent. Because we conclude that the district court erred in submitting the issue of Rhoads' negligence to the jury, we affirm.

Although somewhat in controversy, the facts giving rise to this litigation are not complicated. Rhoads sustained injuries, and his wife died as a result of injuries inflicted, when the automobile in which they were riding veered off the road, struck a guard rail and overturned.

The parties stipulated to the following: The incident occurred on February 11, 1969, at approximately 1:30 p. m. on

Route 22, two miles west of Armagh, Pennsylvania, in Indiana County. At that time, the husband, who owned the 1968 Ford Torino automobile, was driving the car in a westerly direction. His wife was a passenger. In the area of the accident, U.S. Route 22 is a two-lane road, with travel in each direction and a painted, dotted line in the center. At the time of the accident, the weather was clear and the roadway was dry.

The initial complaint in this action encompassed two theories—negligence and strict liability. Rhoads contended that the accident was caused by Ford's negligent and defective manufacture of a ball joint on the right front wheel, which condition caused him to lose control of his car after he had passed a tractor-trailer and to crash into the guard rail. As trial opened, plaintiffs dropped the negligence claim and proceeded solely on strict liability.

Ford Motor Company denied the existence of a defective condition in the automobile. It argued that Rhoads caused the accident by his negligent, reckless and careless operation of the vehicle. Specifically, Ford claimed Rhoads failed to steer and control the automobile properly, and drove too fast. Accordingly, Ford claimed that (1) it was not liable to plaintiffs and (2) if found liable, it was entitled to contribution from Rhoads, against whom it had filed a third-party complaint, for his contributory negligence in causing the accident.

The district court conducted a bifurcated trial on the issues of liability and damages. A jury returned special verdicts after the first phase of the trial indicating: (a) the accident was caused by a dangerously defective condition in the vehicle; (b) such condition was in existence when sold by Ford, and (c) Rhoads was negligent in operating the vehicle. At the completion of the secondary trial, the jury returned special verdicts awarding Mr. Rhoads $8,238.75 for his own injuries; and the estate of Mrs. Rhoads $41,000.00 under the surviv-al act, and $103,166.97 under the wrongful death statute.

Thereafter, both Rhoads and Ford filed motions for judgment.[1] Rhoads sought to have the special verdict finding him negligent set aside as against the law and without evidentiary support. Ford similarly urged motions to set aside the first two special verdicts. After a hearing, the district court entered judgment against Ford in favor of Rhoads, as a plaintiff and as a third-party defendant. Ford then filed a timely motion for judgment n. o. v. or, in the alternative, for a new trial. The district court denied these motions by memorandum. 374 F.Supp. 1317 (W.D.Pa.1974). This appeal, timely noticed, followed.

Ford here urges a broadside attack on the judgment below. Principally, it contends that the jury's finding of contributory negligence should bar Rhoads from any and all recovery. Alternatively, Ford seeks to avoid at least part of the liability assessed below. First, it claims Section 402A of the Restatement of Torts (Second) does not envision an action for wrongful death. Second, it seeks contribution from Rhoads on the basis of the jury's finding he was negligent. As a last resort, Ford challenges several aspects of the damages calculations.

█ We immediately dispose of the allegation that an action under the Pennsylvania Wrongful Death statute, Pa. Stat.Ann. tit. 12, § 1601 (1953), does not lie in a claim based on Section 402A. Appellant argues that the statute permits a claim only when "occasioned by unlawful violence or negligence". Although we note that the Pennsylvania Supreme Court affirmed a judgment entered on a wrongful death verdict based on this theory in Woods v. Pleasant Hills Motor Co., 454 Pa. 224, 309 A.2d 698 (1973), we cannot and do not meet this contention here because appellant did not raise the question at trial. Appellant did not except to the district judge's submission of plaintiff's Death Act claim

---

1. Each of these motions had as a proper predicate the denial of an earlier motion for a directed verdict. *See* F.R.Civ.P. 50(b).

to the jury and thus did not preserve the point for appeal.

■ Before evaluating the evidence adduced at trial on the issue of Rhoads' negligence, we emphasize that we may affirm a judgment of the district court if the result be correct even though our reasoning be inconsistent with that of the trial court. Tunnell v. Wiley, 514 F.2d 971 at n.4 (3d Cir. 1975); Litwitcki v. Pittsburgh Plate Glass Industries, Inc., 505 F.2d 189, 192 n.4 (3d Cir. 1974). Thus, we are not precluded from affirming for the reason that there was insufficient evidence to submit the question of Rhoads' negligence to the jury.

■ Rhoads, as third-party defendant, did make a post-trial motion to set aside the jury's third special verdict on liability. However, under the final judgment, Rhoads as plaintiff recovered in his own right for his injuries and there was no judgment entered against him as a third-party defendant. It is axiomatic that only a party aggrieved by a final judgment may appeal. Utility Contractors Association of New Jersey, Inc. v. Toops, 507 F.2d 83, 85–86 (3d Cir. 1974). See generally 9 J. Moore, Federal Practice ¶ 203.06 (2d ed. 1973). Therefore, the third-party defendant might well have believed that he could not appeal the final judgment. While better practice would have dictated that Rhoads file a protective cross-appeal, in these circumstances we will not allow his failure to file a notice of appeal to preclude our review of the record. In this respect, we follow the rule we recently invoked in a modified context: once appellate jurisdiction attaches, "'the power of the court of appeals should be plenary to the extent that it chooses to exercise it. A court should not close its eyes to what is plainly there.'" McCreary Tire & Rubber Co. v. CEAT S.p.A., 501 F.2d 1032, 1038 (3d Cir. 1974), quoting 9 J. Moore,

Federal Practice ¶ 110.25[1], at 273 (2d ed. 1973).

■■ Our review of the record in this case indicates that "what is plainly there" is a total absence of sufficient evidence to warrant sending the issue of Rhoads' negligence to the jury.[2] The state policeman who investigated the accident testified that the speed limit for automobiles at the time and place of the accident was 55 miles per hour; for trucks, 45 miles per hour. The only surviving eyewitnesses were Mr. Rhoads and Catania, the driver of the tractor-trailer. Each gave admissible testimony,[3] relevant to the rate of speed at which Rhoads was driving, indicating that he was within the speed limit.

The state trooper testified for the defense that Catania had made a statement to the policeman in which, the officer said, Catania admitted to driving at 60 miles per hour when Rhoads passed him. The officer's testimony, however, was clearly hearsay and the court properly sustained an objection when it was proffered first. After Catania's deposition was read into the record, the defense elicited the information a second time from the trooper, who read from his report of the accident, and it was allowed. This evidence, however, was relevant only on the issue of Catania's credibility, not for the truth of the matter asserted.

Thereafter, and by way of rehabilitation of Catania, plaintiffs placed in evidence the five-page statement of narrative facts which Catania had signed for the police and in which he had said: "I told [the trooper] that I was traveling 50 mile (sic) per hour when the car passed my truck. This was an estimate as I did not look at my speedometer when the car passed me. I could in fact have been going slower than 50 mile (sic) per

---

2. In a diversity case governed by Pennsylvania law, the issue of negligence can be submitted to the jury only when there is sufficient evidence from which the jury can reasonably find such negligence "without resort to prejudice or guess". Leizerowski v. Eastern Freightways, Inc., 514 F.2d 487 (3d Cir. 1975); see

Kridler v. Ford Motor Co., 422 F.2d 1182, 1184 (3d Cir. 1970).

3. Catania moved to California and was unavailable for trial. However, his pre-trial deposition was read into the record. N.T. 123.

hour."[4] Also in evidence was the truck driver's statement during cross-examination at his deposition, when asked his response if the state policeman's report indicated that Catania had told the trooper he had been going 60 when passed by Rhoads: "If I may use the word, sir, he is a liar."

 Moreover, the brute fact remains that, in Pennsylvania, speed in excess of the statutory limit is not negligence unless the speed was a proximate cause of the accident. E. g., Roadman v. Bellone, 379 Pa. 483, 489–90, 108 A.2d 754, 758 (1954). Here, Ford simply failed to satisfy its burden of proof.[5] Instead, the defense was content to limit its case to one expert witness—on the issue of whether the ball joint was defective—and the testimony of the state trooper. It produced no evidence of causation. The parties stipulated that, at the time and place of the accident, the weather was clear, the roadway straight, and the pavement dry. In such circumstances, and even assuming Rhoads was driving 60 miles per hour, there was insufficient evidence from which the jury could find "without resort to prejudice or guess" that such speed caused the loss of control. Leizerowski v. Eastern Freightways, Inc., *supra*; Kridler v. Ford Motor Co., *supra*; Smith v. Bell Telephone Co., 397 Pa. 134, 138, 153 A.2d 477, 479–80 (1959). Accordingly, we hold that the district court erred in submitting the question of Rhoads' negligence to the jury. It should have granted the third-party defendant's motion for a directed verdict. Our decision in this respect renders it unnecessary to reach appellant's arguments that the contributory negligence of a driver (1) would bar recovery under Section 402A, or (2) entitle the manufacturer of a defective product to contribution.

We have also considered each of the other arguments raised by appellant and find them to be without merit.

The judgment of the district court will be affirmed.

---

4. Unlike the statement in the trooper's report which attributed a speed of 60 miles per hour to Catania's vehicle, Catania's signed statement contained the following:

When I reached the end of the curve and started downgrade a westbound car passed by me. There wasn't any eastbound traffic in sight and the car passed me in a legal passing zone. I would estimate my speed to be about 50 mile (sic) per hour at this point so the car had to (sic) traveling at about 55 to 60 mile (sic) per hour.

5. The only other suggestion of negligence on the part of Mr. Rhoads was the controverted testimony concerning whether he began to pass Catania's vehicle on the curve or in the straightaway. However, that the automobile went out of control in the straightaway was uncontroverted. Thus, irrespective of the starting point of the pass, we conclude that, if in fact Rhoads began the pass in the curve, there was no evidence adduced to support a conclusion that such a breach of the duty of care caused the accident.