756 A.2d 1116

Robert D. HARMAN and Dorothy E. Harman on
Behalf of Christopher HARMAN, a minor
and in their own right, Appellees,

v.

Bishnu C. BORAH, M.D. and Children's Hospital
of Philadelphia and Judy Bernbaum, M.D.
and Jeanne Parks, M.D., Appellants.

Appeal of Children's Hospital of Philadelphia
and Jeanne Parks, M.D.

Supreme Court of Pennsylvania.

Argued Jan. 31, 2000,

Decided Aug. 21, 2000.

458

460

Allan H. Starr, Ronald A. Krauss, Philadelphia, for C.H.O.P. & Jeanne Parks, M.D.

Thomas R. Kline, Derek R. Layser, Philadelphia, for Robert & Dorothy Harman.

Alan Focht, Paul E. Peel, Esq., Plymouth Meeting, for Judy Bernbaum, M.D.

Donald Camhi, Philadelphia, for Bishnu C. Borah, M.D.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

Appellants, Children's Hospital of Philadelphia (CHOP), Jeanne Park, M.D.,[1] and Judy Bernbaum, M.D., claim that the Superior Court committed an error of law by vacating, in part, the Judgment of the Court of Common Pleas of Philadelphia County (trial court) and remanding the matter for a new trial. The sole issue presented for our review is whether the Superior Court erred by creating a *per se* rule that a trial court commits reversible error, and has no discretion to deny a motion for a mistrial, whenever the judge engages in an off-

---

1. Although the caption spells Dr. Park's name with an "s", and the parties have made no attempt to correct the caption throughout the appeal, in the opinion, we address Dr. Park by her proper name, omitting the superfluous letter.

the-record discussion with a witness in the presence of the jury.

## FACTS AND PROCEDURAL HISTORY

On January 10, 1986, Appellee Dorothy Harman took her eighteen-month-old son Christopher to Dr. Bishnu Borah for a measles, mumps, and rubella (MMR) vaccination. About a week later, Christopher developed a fever, and Mrs. Harman took Christopher back to Dr. Borah's office. Dr. Borah diagnosed Christopher with left otitis media (inflammation of the middle ear) and prescribed an antibiotic. Two days later, Mrs. Harman and her husband, Appellee Robert Harman, rushed Christopher to the Lower Bucks County Hospital Emergency Room, where he was admitted and diagnosed with left otitis media and encephalitis (inflammation of the brain). Mr. and Mrs. Harman transferred Christopher to CHOP, where he received treatment for encephalitis from Dr. Park and Dr. Bernbaum. As a result of the encephalitis, Christopher Harman suffered permanent neurological damage, which caused him cognitive and physical impairment.

On January 11, 1988, the Harmans commenced a civil action against the manufacturer of the MMR vaccine and various employees of the manufacturer, related entities, and Dr. Borah, alleging breach of warranty, strict liability, failure to warn, lack of informed consent, misrepresentation, negligence, recklessness, and fraud. On October 14, 1988, the Harmans filed an amended complaint that named CHOP, Dr. Park, and Dr. Bernbaum as additional defendants. After that, the Harmans petitioned the trial court to dismiss the action without prejudice, which the trial court granted. On May 10, 1994, the Harmans praeciped to have their complaint reinstated, and the matter proceeded against Dr. Borah, CHOP, Dr. Park, and Dr. Bernbaum.[2] Prior to trial, Dr. Borah made a motion for summary judgment to dismiss him from the case, which the trial court granted.

2. In response to a motion by the Harmans, the trial court removed the manufacturer, its employees, and related entities from the action.

A jury trial commenced on April 10, 1996. The jury returned a verdict finding CHOP, Dr. Park, and Dr. Bernbaum not liable. The Harmans filed a timely appeal to the Superior Court, raising four issues.[3] The Superior Court reviewed two of the four issues. First, the Superior Court found that the trial court committed no error in granting summary judgment in favor of Dr. Borah. *Harman v. Borah*, 720 A.2d 1058, 1064 (Pa.Super.1998). Second, the Superior Court determined that the trial court should have granted the Harmans' motion for a mistrial after the trial court engaged in an off-the-record discussion with an expert defense witness in front of the jury. *Id.* Consequently, the Superior Court affirmed the Order of the trial court as to the summary judgment but vacated its judgment in favor of CHOP, Dr. Park, and Dr. Bernbaum and remanded for a new trial on the basis that the trial court erred by not declaring a mistrial.

## DISCUSSION

On April 18, 1996, CHOP and Dr. Park called Dr. Roy Douglas Strand to testify as an expert witness. Dr. Strand took the stand and provided his opinion as an expert in the field of pediatric neuroradiology. Immediately after Dr. Strand completed his testimony concerning information from various CAT scans and related reports, the trial court judge announced, in open court, that he wished to speak with Dr. Strand. The full text of the recorded conversation follows:

THE COURT: Doctor, may I see you a minute? It has nothing to do with this case.

3. The four issues raised by the Harmans for the review of the Superior Court are as follows:
 (1) whether the trial court erred in granting Dr. Borah's motion for summary judgment;
 (2) whether the trial court abused its discretion in refusing to grant a new trial when the court requested to speak off the record with a defense expert;
 (3) whether the trial court erred in denying Appellant's motion to disqualify a defense expert, Dr. Warren Grover; and
 (4) whether the trial court erred in permitting Dr. Peter Berman to offer opinion testimony.
 *Harman v. Borah*, 720 A.2d 1058, 1061 (Pa.Super.1998).

N.T., 04/18/00, at 70 (R.R. 2450). The discussion between the judge and the witness continued off-the-record and out of the range of hearing of the jury. It is the effect on the jury of that private conversation that is at issue.

After reconvening after the lunch break recess, counsel for the Harmans approached the trial court, objected to the judge's discussion with the witness, and moved for a mistrial. N.T., 04/18/00, at 107–109 (R.R. 2487–89). The Harmans argued that the judge's consultation with an expert for the defense on a personal matter gave the prejudicial appearance that the trial court found Dr. Strand more credible than it found any of their witnesses. The trial court overruled the objection and denied the Harmans' motion for a mistrial. The following morning, the trial court asked counsel for the Harmans whether he desired a curative instruction to address the contested conversation. N.T., 04/19/00, at 5–6 (R.R. 1528–29). Despite the requests by the Harmans' counsel not to issue an instruction,[4] the trial court started the day's proceeding with the following curative instruction:

> One thing I wanted to mention to you is this: During the course of this trial, I am not concerned or favor either the plaintiff or the defendant. That's not my job nor am I intending to leave that impression to you. Now, if I at any time talk to either the lawyer for the plaintiff or the lawyer for the defendant, if I talk to a witness for the plaintiff or a witness for the defendant, other than when they're sitting here in the witness stand, if I talk either to the defendant or to the plaintiff, that does not mean that I am favoring one side or the other, that you say the Judge is talking to one side or not the other side.
>
> So don't interpret that I'm favoring one side or the other. If I just so happen to talk to one or the other, that's fine. In fact, I think one of the jurors was walking down the hall the other day and said "good morning" and I said "good

---

4. It is evident from the record that the Harmans' counsel expressed to the trial court his concern that an instruction would compound the prejudice by drawing the attention of the jurors to the personal dialogue between the judge and witness. N.T., 04/19/00, at 5–6 (R.R. 1528–29).

morning" and said "nice weather." I'm glad she did not talk to me rather than counsel, but all we said was "good morning" and, you know, "nice weather," that's it.

But I am not favoring one side or the other. I am not against one side or the other. So I just wanted to let you know so you at least get the correct impression what my job is. My job is to give you the law. You're the ones who have to make the decisions on the facts.

N.T., 04/19/00, at 14–15 (R.R. 1537–38).

Appellants claim that the Superior Court erred on several grounds. Among their chief assertions of error, they contend that the Superior Court failed to apply the abuse of discretion standard of review and the associative harmless error doctrine. In a brief analysis, the Superior Court first reasoned that any time a jury observes a conversation between the judge and the witness, the jury may perceive that discussion as a judicial endorsement of that witness' credibility. *Borah*, 720 A.2d at 1064. Relying exclusively on another Superior Court case, the court stated that judges should refrain from speaking to witnesses, except in "rare situations where such intervention is demanded in the interests of justice." *Id.* (quoting *Fudala v. Leedom*, 270 Pa.Super. 322, 411 A.2d 548, 550 (1979)). Next, citing *McKown v. Demmler Properties, Inc.*, 419 Pa. 475, 214 A.2d 626 (1965), the Superior Court found, that we have "held that a curative instruction is insufficient to rectify the appearance of impartiality in this instance." *Id.* The Superior Court ruled that the conduct of the trial court judge compelled it to grant a new trial. We agree that the Superior Court conducted an improper review of the decision of the trial court and misinterpreted our holding in *McKown*, and we reverse the Superior Court's decision to remand for a new trial.

 Trial courts have broad discretion to grant or deny a new trial. *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (1998); *Morrison v. Commonwealth, Dept. of Public Welfare*, 538 Pa. 122, 646 A.2d 565, 570 (1994); *Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 625 A.2d 1181, 1184 (1993). "The

grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings." *Dornon v. McCarthy,* 412 Pa. 595, 195 A.2d 520, 522 (1963). Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. *Morrison,* 646 A.2d at 570; *Coker,* 625 A.2d at 1187; *Spang & Co. v. U.S. Steel Corp.,* 519 Pa. 14, 545 A.2d 861, 865 (1988); *Atene v. Lawrence,* 456 Pa. 541, 318 A.2d 695, 697 (1974); *Kralik v. Cromwell,* 435 Pa. 613, 258 A.2d 654, 656 (1969).

■ In *Coker,* we provided a comprehensive discussion of the standard that appellate courts must use when reviewing new trial orders. *Coker,* 625 A.2d at 1185–88. We recognized the historical existence of what appeared to be two standards: (1) abuse of discretion and (2) inquiry into the legal merits of the reasons of the trial court. *Id.* at 1184–86. However, we acknowledged that those two inquiries are, for all intents and purposes, identical, and have abandoned, for sake of clarity, the use of the term "legal merits." *Morrison,* 646 A.2d at 570–71 & n. 6. It is only the scope of review that varies.[5] *Id.* at 570; *Coker,* 625 A.2d at 1186. Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial

**5.** This difference between scope of review and standard of review is the following:

"Scope of review" and "standard of review" are often—albeit erroneously—used interchangeably. The two terms carry distinct meanings and should not be substituted for one another. "Scope of review" refers to "the confines within which an appellate court must conduct its examination." In other words, it refers to the matters (or "what") the appellate court is permitted to examine. In contrast, "standard of review" refers to the manner in which (or "how") that examination is conducted. In *Coker* [,] we also referred to the standard of review as the "degree of scrutiny" that is to be applied. *Morrison,* 646 A.2d at 570 (citations omitted).

court abused its discretion. *Morrison*, 646 A.2d at 570; *Coker*, 625 A.2d at 1187.

■ Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. *Morrison*, 646 A.2d at 571; *see Riccio v. American Republic Insur. Co.*, 550 Pa. 254, 705 A.2d 422, 426 (1997). First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. *See Spang*, 545 A.2d at 868. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake. *See Stewart v. Motts*, 539 Pa. 596, 654 A.2d 535, 540 (1995); *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28, 39 (1991), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992); *Commonwealth v. Ryder*, 467 Pa. 484, 359 A.2d 379, 382 (1976); *Dornon*, 195 A.2d at 522.

■ To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. *Morrison*, 646 A.2d at 571. A review of a denial of a new trial requires the same analysis as a review of a grant. *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669, 673 (1985). First, the appellate court must examine the decision of the trial court that a mistake occurred.

■ At this first stage, the appellate court must apply the correct scope of review, based on the rationale given by the trial court. There are two possible scopes of review to apply when appellate courts are determining the propriety of an

order granting or denying a new trial. *Morrison,* 646 A.2d at 570, *Coker,* 625 A.2d at 1186. There is a narrow scope of review: "[w]here the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard." *Morrison,* 646 A.2d at 571.

> [Conversely,] [i]f the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial 'in the interests of justice,' the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial.

*Id* at 570. Even under a narrow scope of review, the appellate court might still need to examine the entire record to determine if there is support for any of the reasons provided by the trial court. *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 750 (2000); *Thompson,* 493 A.2d at 673.

The appropriate standard of review also controls this initial layer of analysis. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. *See Widmer,* 744 A.2d at 753 (decision whether verdict is against weight of evidence is discretionary). If the mistake concerned an error of law, the court will scrutinize for legal error. *See Morrison,* 646 A.2d at 571 n. 8 (propriety of jury instructions entails question of law). If there were no mistakes at trial, the appellate court must reverse a decision by the trial court to grant a new trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred. *See Von der Heide v. Commonwealth, Dept. of Transp.,* 553 Pa. 120, 718 A.2d 286, 290 (1998); *Atene,* 318 A.2d at 697; *Kralik,* 258 A.2d at 656; *see also Riccio,* 705 A.2d at 427 (holding that because judge, who was substituted for post-trial motions, erred in finding that trial court judge made mistake of law, grant of new trial was error).

If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to

the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial. *Morrison*, 646 A.2d at 571. "Discretion must be exercised on the foundation of reason." *Coker*, 625 A.2d at 1184 (quoting P.L.E. New Trial § 2). An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Id.* at 1184–85. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. *Morrison*, 646 A.2d at 571. "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Id.* (quoting *Coker*, 625 A.2d at 1187).

When determining whether the trial court abused its discretion, the appellate court must confine itself to the scope of review, as set forth in our preceding discussion. If the trial court has provided specific reasons for its ruling on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, applying a narrow scope of review, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons. *Coker*, 625 A.2d at 1188. "As a practical matter, a trial court's reference to a finite set of reasons is generally treated as conclusive proof that it would not have ordered a new trial on any other basis." *Id.* at 1184; *see Widmer*, 744 A.2d at 750–51. Alternatively, where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the "interests of justice," an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record. *Morrison*, 646 A.2d at 570; *Coker*, 625 A.2d at 1185.

In the present matter, there is no disagreement that the trial court made a mistake. Because the topic of the conversation had no relevance to the trial, the trial court

should have waited until the jury had left the courtroom before approaching the witness. This, however, should have marked merely the beginning of the Superior Court's appellate review. Instead, the Superior Court viewed the conduct of the trial court as an automatic error of law, held that instructions could not cure the error, and concluded its review. However, no legal foundation exists for such a conclusion. Certainly, judges should avoid any conduct that gives the appearance of favoritism, prejudice, or bias for or against one party. *See Hileman v. Pittsburgh & Lake Erie R.R. Co.*, 546 Pa. 433, 685 A.2d 994, 998 (1996); *Downey v. Weston*, 451 Pa. 259, 301 A.2d 635, 642 (1973); *Thornton v. Weaber*, 380 Pa. 590, 112 A.2d 344, 349 (1955); *see also* Code of Judicial Conduct, Canon 2(A) (directing judges to conduct themselves in manner that promotes public confidence in the integrity and impartiality of the judiciary). Actual and perceived impartiality of the trial court is fundamental to our judicial system. *Judicial Inquiry and Review Board of the Supreme Court of Pennsylvania v. Fink*, 516 Pa. 208, 532 A.2d 358, 367 (1987). Yet, there is no *per se* rule that mandates a new trial whenever a trial court judge converses with a witness about a private matter. Conversing with witnesses is a discretionary power of trial courts, and appellate courts should review challenges to judicial dialogue for an abuse of discretion. The Superior Court erred at two levels. First, it reviewed the conversation as a legal mistake, rather than an abuse of discretion. Second, it failed to evaluate whether the reasons supplied by the trial court for denying a new trial had support in the record. In sum, the Superior Court did not apply the proper standard of review.

■ The remaining question is whether it was an abuse of discretion for the trial court to deny the motion for a new trial. Did the trial court judge create an appearance of partiality when he conferred with Dr. Strand off the record in the presence of the jury? If there were an appearance of partiality that could have had a prejudicial effect on the jury's deliberations, did the trial court take satisfactory action to render the error harmless? Because the trial court offered

three specific reasons in support of its denial of a new trial, and did not suggest the existence of other reasons, we must examine the record to determine whether those stated reasons and factual bases find support in the record. *Morrison*, 646 A.2d at 571; *Coker*, 625 A.2d at 1187. To evaluate whether the denial of the Harmans' request for a mistrial was manifestly unreasonable, we reviewed the entire record to appreciate fully the nature of the conduct, the context in which it occurred, and any subsequent remedial actions designed to remove any prejudicial effects. *See Woods v. Pleasant Hills Motor Co.*, 454 Pa. 224, 309 A.2d 698, 704 (1973); *Downey*, 301 A.2d at 643.

 The trial court found that the Harmans failed to raise an immediate objection to the conversation. It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions. *Takes v. Metropolitan Edison Co.*, 548 Pa. 92, 695 A.2d 397, 400 (1997); *McMillen v. 84 Lumber, Inc.*, 538 Pa. 567, 649 A.2d 932, 934 (1994); *Reilly v. Southeastern Pennsylvania Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291, 1296 (1985). Granting or denying an untimely objection lies in the discretion of the trial court. Requiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114, 116 (1974). We have stressed that "[w]aiver is indispensable to the orderly functioning of our judicial process and developed out of a sense of fairness to an opposing party and as a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues which the appealing party has failed to preserve." *Reilly*, 489 A.2d at 1300.

 There exists, however, an exception to the waiver doctrine. We first announced this exception in *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985). According to our decision in *Hammer*, in limited circumstances, a party may raise allegations of judicial misconduct for the first

time in post-trial motions. While trial counsel has an obligation to object to improper language and/or behavior in the courtroom to effectively represent his or her client, there may be circumstances in which objections have a deleterious effect on the jury or even on the judge whose behavior is extremely unprofessional.

In *Hammer*, the trial court acted in a manner assured to cast a shadow of bias in the courtroom. Among other prejudicial conduct, the trial court repeatedly interrupted defense counsel during his direct examination of the defendant and defense witnesses to ask prosecutorial-style questions, failed to rule on defense objections, and bolstered the Commonwealth's case with his comments and questions. *Hammer*, 494 A.2d at 1061–64. Trial counsel failed to object to these actions and omissions. *Id.* at 1058 n. 2. Consequently, when trial counsel presented allegations of misconduct for the first time in post-trial motions, the trial court ruled that the defendant had waived those issues. *Id.* On appeal to this Court, we declined to apply the waiver doctrine. Our rationale was that in certain circumstances, where a timely objection would be a futile, and possibly detrimental, exercise in legal procedure, a strict enforcement of the waiver doctrine would not be constructive. *Id.* at 1059 & n. 4. We explained that:

> [A] judge who poses a question or makes a comment during trial is predisposed to believe that the question or comment is proper, lest it not be spoken. Given that predisposition, the likelihood that the judge will be well-cautioned by counsel's objection is negligible. In that context, the rationale underlying the waiver doctrine, that timely objection gives the court the opportunity to cure the error, becomes a relatively empty one. Indeed, the possibility exists that counsel's objection will be viewed as a source of annoyance and may well aggravate the situation.

*Id.* at 1059. We acknowledged that repeated denials of objections might have also a negative effect on juries. *Id.* at 1059 n. 4 (citing *Collins v. Sparks*, 310 S.W.2d 45, 48–49 (Ky.1958)). In addressing the allegations of judicial misconduct in *Hammer*, we held that:

*On this record,* whereas it *appears that objection would be meaningless* to satisfy the reasons for raising objection *and, as further reflected by this record,* indeed *intensified judicial animosity,* justice is not served by the strict application of the waiver doctrine. Accordingly, we hold that the failure of trial counsel to object to questioning by the judge, who is charged with a function of self-regulation, *will not under all circumstances* render the allegation of judicial impropriety unavailable for appellate review.

*Id.* at 1060 (emphasis added). We emphasized that it was clear from the record that a timely objection might not only not cause the trial court to cease his prejudicial behavior, it might further irritate the judge. *Id.* at 1059 n. 3 (citing parts of notes of transcript where trial court brusquely dismissed objections by defense counsel).

In *Hammer* it was apparent that a timely objection could have annoyed the trial court and worsened the situation. The defendant provided numerous examples in the record of behavior that demonstrated a possible bias against him. Furthermore, the defendant offered specific instances in the record when the trial court judge failed or refused to respond to defense counsel's objections or overruled them in a cavalier manner. *Hammer* did not mark the end of the waiver doctrine in cases of judicial impropriety. To the contrary, the general rule remains that a party waives an issue concerning perceived trial court error, if the party fails both to preserve the issue with a timely and specific objection at trial and present it in post-trial motions. Thus, *Hammer* provides a limited exception to the waiver doctrine. Where it appears from all the circumstances that a timely objection to perceived judicial misconduct would be meaningless, a party may choose to raise the issue for the first time at post-trial motions to preserve it for appellate review. This involves some risk, which a trial counsel should not assume lightly.[6]

6. *Compare DiMonte v. Neumann Medical Center,* 751 A.2d 205 (Pa.Super.2000) (holding that, despite untimely objections, the plaintiff was entitled to an evidentiary hearing to present record evidence that during proceedings the trial court judge allegedly talked on a telephone

474

The burden is on the party asserting the *Hammer* exception to the waiver doctrine to demonstrate that lodging a timely objection would have been meaningless. An objection would not be meaningless merely because the judge is likely to overrule it.

■ Although *Hammer* was a criminal case and involved mostly on-the-record comments, those facts are not imperative to the application of this waiver exception. A strict application of the waiver doctrine that does not advance its purpose serves no greater function in a civil context than in a criminal arena. We hold that the *Hammer* exception, which we found in a criminal case, is also applicable to civil cases and all claims of judicial impropriety that fall within the ambit of the exception.[7]

■ Counsel for the Harmans raised an objection to the conversation and moved for a mistrial one hour after the event transpired. When asked by the trial court why counsel did not take prompt action, counsel explained that he did not want to draw further attention to the conversation. N.T., 04/18/00, at 108–109 (R.R. 2488–89). While we can accept counsel's concern about further alerting the jury, we find no justification for counsel's inertia. The Harmans disclose no facts on the record to suggest that a timely objection would have been meaningless or caused greater harm to their case. There is simply no evidence that the trial court expressed any bias against the Harmans or their counsel during the trial. On the contrary, the record shows that the trial court heard the late motion for a mistrial, allowed counsel an opportunity

on numerous occasions, stood on a table to adjust the air conditioning, left the courtroom during video testimony by the plaintiff's expert and the plaintiff's closing argument, and acted in other ways that demonstrated to the jury that the judge was indifferent to the plaintiff's case) *with Commonwealth v. DeBooth,* 379 Pa.Super. 522, 550 A.2d 570 (1988), *alloc. denied,* 522 Pa. 588, 561 A.2d 740 (1989) (finding that, by making untimely objections, the defendant waived his claim of misconduct by the trial court for requesting that he stand in the presence of the jury for a witness to make a general, physical comparison).

7. As we stated in *Hammer,* requests for judicial recusal always require a timely, specific objection. *Hammer,* 494 A.2d at 1061–64; *see Reilly,* 489 A.2d at 1300.

to support his claim, but ultimately denied the request and issued a curative instruction. The preferred course of action would have been for counsel to move for a prompt sidebar discussion with the judge to alert the trial court to what he perceived as on-going prejudicial behavior. In fact, counsel conceded to the trial court that he should have done that. N.T., 04/18/00, at 108–109 (R.R. 2488–89). Furthermore, after the jury had left the courtroom, the court entertained motions by the parties on other issues. These motions may have lasted for one-half hour. At no time during those arguments did counsel for the Harmans broach the subject of the private conversation with the trial court. Failure to raise a prompt objection is a valid reason for the trial court to deny a motion for a new trial.

Additionally, the trial court gave an instruction intended to cure any prejudice stemming from the conversation. A trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate statement of law, there is no reversible error. *Commonwealth v. Ragan*, 560 Pa. 106, 743 A.2d 390, 397 (1999). A careful review of the record reveals nothing improper about the instruction. The trial court phrased it with general language. It did not mention the specific dialogue. The trial court emphasized to the jury that he did not favor either party and clarified that the jury should not place any importance on whether the judge conversed with a particular witness or attorney. Ironically, the Harmans also complain that the instruction was untimely. Certainly, a prompt instruction has a greater likelihood of curing a trial error. However, under the circumstances in this case, the instruction was appropriate, clear, and effective. Had the instruction addressed the conversation at issue, it could have caused more mischief by highlighting the conduct for the jury. *See McKown*, 214 A.2d at 629.

In *McKown*, a trial court judge gave a hearty greeting to the defendant when he took the witness stand. 214 A.2d at 629. The judge then told the jury that he and the defendant were old friends who had worked together as football referees.

*Id.* In an attempt to neutralize his remarks, the judge issued an instruction to the jury, which again referred to the defendant as an old friend. *Id.* Fearing that the instruction compounded the appearance of bias, the trial court ordered a new trial. *Id.* We affirmed the decision of the trial court.

The Superior Court relied on *McKown* to opine that an instruction can never remedy the prejudice caused when a judge speaks to a witness about a personal matter in open view of the jury. That interpretation of *McKown* is erroneous. We have consistently held that clear instructions, which accurately inform, rather than mislead, the jury about the issues or law may cure prejudice resulting from the appearance of judicial bias. *Von der Heide,* 718 A.2d at 288; *Stewart,* 654 A.2d at 540; *Woods,* 309 A.2d at 704; *Glider v. Commonwealth, Dept. of Highways,* 435 Pa. 140, 255 A.2d 542, 547 (1969). Faced with the task of removing any possible taint from his conversation with Dr. Strand, the trial court judge crafted an instruction that spoke generally about the semblance of partiality and bias without drawing unnecessary attention to the challenged conduct. Thus, even if the conversation had some prejudicial effect on the Harmans' case, the curative instruction rendered it harmless. This meritorious reason, alone, justifies the decision of the trial court.

For its final reason, the trial court stated that, on several occasions, it advised the members of the jury that they are the sole fact finders and determiners of witness credibility. Our review of the record indicates that the trial court provided standard instructions throughout the trial that imparted to the jury its function in the case.

## CONCLUSION

Having found that the record supports the reasons given by the trial court for denying the Harmans' motion for a mistrial, we conclude that the trial court did not abuse its discretion. Thus, we reverse the Superior Court for awarding a new trial in error. However, the Superior Court did not address two claims of the Harmans that were before it, concerning alleged

trial court errors. In addition to the two issues addressed by the Superior Court, the Harmans challenged the decisions of the trial court in (1) denying the Harmans' motions to disqualify defense expert, Dr. Grover, and in (2) permitting Dr. Berman to offer his expert opinion. Accordingly, we reverse the part of the Order of the Superior Court that granted a new trial and remand this matter to the Superior Court to render decisions on these two outstanding issues.[8]

Justice NIGRO files a concurring opinion.

Justices ZAPPALA and SAYLOR concur in the result.

NIGRO, Justice, concurring.

I join the majority opinion, except for the portion of the opinion in which the majority finds that the Harmans' failure to lodge an immediate objection when the trial court engaged in an improper conversation with an expert witness for the defense constituted a valid reason for the trial court to deny their motion for a new trial.

In effect, the majority concludes that the trial court properly found that the Harmans' waived their objection to the improper conversation by waiting an hour before lodging the objection, despite the fact that counsel for the Harmans explained the one hour delay by noting that he did not wish to draw any further attention to the conversation in the presence of the jury. Contrary to the majority, I believe that the Court's decision in *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985) supports a conclusion that the waiver doctrine should not be strictly applied in the instant case to justify the trial court's decision denying the Harman's motion for a mistrial.

In *Hammer*, then Justice, now Chief Justice, Flaherty wrote on behalf of the Court that the waiver doctrine should not be strictly applied where alleged improprieties of a trial judge are at issue, for "when the position of power and

---

**8.** Nothing in this Opinion shall affect the affirmance of the Superior Court concerning the grant of summary judgment by the trial court in favor of Dr. Borah.

authority enjoyed by the judge is considered, the strict enforcement of the waiver doctrine becomes inadvisable." *Hammer*, 508 Pa. at 97, 494 A.2d at 1058. Accordingly, the Court refused to apply the waiver doctrine to foreclose Hammer from obtaining relief in the form of a new trial based on the trial judge's improper conduct in questioning defense witnesses, despite the fact that the appellant only challenged the trial judge's conduct in post trial motions. *Id.* at 99, 494 A.2d at 1060. Chief Justice Flaherty explained that:

> [A] judge who poses a question or makes a comment during a trial is predisposed to believe that the question or comment is proper, lest it not be spoken. Given that predisposition, the likelihood that the judge will be well-cautioned by counsel's objection is negligible. In that context, the rationale underlying the waiver doctrine, that timely objection gives the court the opportunity to cure the error, becomes a relatively empty one. Indeed, the possibility exists that counsel's objection will be viewed as a source of annoyance.... .

*Id* at 98, 494 A.2d at 1059.

In the instant case, counsel for the Harmans objected to an improper, off-the-record conversation with a defense expert witness in the presence of the jury.[1] Although the objection was lodged approximately an hour after the improper conversation took place, counsel for the Harmans attempted to explain the delay to the trial judge by noting that he did not

---

1. The majority states that the Harmans have presented no evidence that the trial judge expressed any bias against them during the trial. But that is exactly what counsel for the Harmans objected to—an apparent bias in favor of a defense expert witness which the trial judge exhibited in the presence of the jury. In addition, the majority appears to place the burden on the Harmans to establish that their objection was not waived. The placement of such a burden of proof on the Harmans is in no way proper, as they come before this Court as appellees, and not appellants. Finally, I would disagree with any suggestion that the exception to the waiver doctrine set forth in *Hammer* is limited to only those situations where the record reveals that the trial judge exhibited a pronounced bias in favor of one of the parties appearing before him. In my view, objection to the inappropriate conduct of a judge can be equally meaningless regardless of whether the judge's inappropriate conduct demonstrates a bias in favor of one of the parties or not.

wish to draw further attention to the conversation in the presence of the jury. In my view, implicit in counsel's explanation for the delay in objecting are two distinct rationales. First, counsel for the Harmans was obviously concerned that an immediate objection on his part in the presence of the jury would further draw attention to the improper conversation and might thereby bolster a perception on the part of individual jurors that the trial judge found Dr. Strand to be more reliable than the expert witnesses for the Harmans. In addition, it seems likely that counsel's delay resulted, at least in part, from his reluctance to risk antagonizing the judge and alienating jurors, who naturally look to the trial judge for guidance. My belief in this regard is founded in no small part on the common-sense notion that it would take a very rare attorney indeed to expressly state such an explanation to the same trial judge whose conduct he was objecting to as improper, and before whom he was trying his case.

Counsel who wish to object to comments or conduct on the part of a trial judge which they find to be improper are faced with an exceedingly difficult choice. They can either lodge an immediate objection, and risk further drawing the jury's attention to the improper conduct, antagonizing the trial judge, and/or alienating the jury; or they can postpone lodging an objection in an effort to ameliorate one or more of their legitimate concerns and risk waiving the objection altogether. The Court recognized this reality in *Hammer*, citing with approval the following excerpt from *Collins v. Sparks*, 310 S.W.2d 45 (Ky.1958), in which case the Court of Appeals of Kentucky established an exception to the requirement of timely objection:

When the trial judge makes an objectionable remark, counsel is faced with a dilemma. He may risk antagonizing the judge by calling attention to the objectionable remarks, which scarcely can be erased from the minds of the jurors by a subsequent admonition. If objection is made unsuccessfully, the harm may be aggravated and the situation may be worsened. He may make no objection in the hope that the jury will ignore the remark. This places the

counsel in an unfair position and at a disadvantage which may not be due to any conduct on his part.... Viewed in this light, an objection to the remarks of a trial judge is unnecessary, ...

*Commonwealth v. Hammer*, 508 Pa. 88, 98 n. 4, 494 A.2d 1054, 1059 n. 3 (citing *Collins v. Sparks*, 310 S.W.2d 45, 48–49 (Ky.1958)). Although the majority recognizes the difficult choice faced by counsel who believe that the trial judge before whom they are appearing has acted in an inappropriate manner, it nevertheless goes on to conclude that the exception to the waiver doctrine established by the Court in *Hammer* will provide them relief only in the most egregious cases of inappropriate judicial conduct, and therefore concludes that the exception does not apply in the instant case. I disagree with the majority's conclusion in this regard, and would find that the facts of the instant case support the application of the *Hammer* exception to excuse counsel's failure to lodge a contemporaneous objection to the trial judge's admittedly improper conversation with a defense expert witness.[2] Therefore, I respectfully disagree with the majority's determination that the Harmans' failure to immediately object to the improper conversation constituted a proper basis for the trial court's decision to deny their motion for a new trial. In all other respects, however, I join the majority opinion.

**2.** As noted by the majority, the trial judge in the instant case issued a curative instruction the day after the improper discussion took place. Thus, it would appear that the instant case represents one of those relatively uncommon instances referred to by the Court in *Hammer* where a trial judge is "well-cautioned" by counsel's objection to his improper comments or conduct. *Hammer*, 508 Pa. at 98, 494 A.2d at 1059. That fact, of course, has little bearing on the question of whether justice would be served by strictly applying the waiver doctrine in the instant case.