Richard SODDERS

v.

Christopher T. FRY and Ohioville Borough and/or Ohioville Borough Police Department, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.

Decided Dec. 9, 2011.

John L. Kwasneski, Pittsburgh, for appellants.

Kenneth G. Fawcett, Ambridge, for appellee.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge PELLEGRINI.

Police Officer Christopher T. Fry (Officer Fry), Ohioville Borough, and the Ohioville Borough Police Department (collectively, Borough) appeal an order of the Court of Common Pleas of Beaver County (trial court) granting Richard Sodders (Sodders) a new trial because the trial court did not specifically instruct the jury on negligence *per se* as to both Officer Fry and Sodders even though both parties admittedly violated separate provisions of the Motor Vehicle Code (Code).[1] Discerning no error in the trial court's opinion, we affirm.

This lawsuit centers around a motor vehicle accident which occurred in the Borough of Midland, Beaver County, on December 2, 2005. At approximately 2:00 a.m. that morning, Sodders was travelling eastbound on Midland Avenue approaching the intersection with 9th Street where he wished to make a left turn. Three police vehicles were approaching him heading westbound on Midland Avenue. The officers were admittedly travelling approxi-

---

1. 75 Pa.C.S. §§ 101–9805.

mately 35 m.p.h. in a 25 m.p.h. zone and while they were responding to a disturbance call, none of them were utilizing their lights or siren s.[2] After the first two vehicles passed, Sodders made a left turn onto 9th Street and, in doing so, was struck by the third vehicle driven by Officer Fry. Sodders suffered various injuries as a result of the accident and had to undergo spinal surgery. In October 2006, he filed a complaint with the trial court alleging negligence on the part of the Borough.

During trial, Sodders testified that on the night in question, he was travelling on Midland Avenue and brought his car to a complete stop at the intersection with 9th Street because he saw two cars approaching from the opposite direction. At this point, he could not see the third vehicle approaching. Sodders testified that he did not realize the two cars were police vehicles until they passed or were just about to pass him because it was very dark and neither car had on its lights or siren. Sodders proceeded to make a left turn onto 9th Street immediately after the second police vehicle passed. Sodders testified that he believed he had ample time to make the turn given the posted 25 m.p.h. speed limit and his claim that the third vehicle was approximately half a block away when he began to make his turn. Sodders testified he was all the way or

almost all the way through the intersection when the collision occurred. The third vehicle did not have on its lights or siren at any time, and Sodders did not know it was a police vehicle until after the accident.[3]

Officer Fry testified that prior to the accident he was at a convenience store on Midland Avenue with Midland Police Officer Bruce Clark (Officer Clark) and Industry Police Officer Tom Czerpak (Officer Czerpak) when Officer Clark received a radio dispatch for a disturbance at a local bar. Officer Fry believed this to be a fairly routine call, most likely a fight. According to Officer Fry, it was standard procedure for officers to respond to disturbance calls in excess of the speed limit without lights or sirens. All three officers headed out onto Midland Avenue in separate vehicles to respond to the call, with Officer Clark in front, Officer Czerpak second and Officer Fry third. According to Officer Fry, he was only two car lengths behind Officer Czerpak's vehicle, or approximately 30 to 40 feet. Officer Fry claimed his vehicle was either in or just about to enter the crosswalk on the opposite side of the intersection when Sodders began to turn in front of him. He testified that he immediately slammed on his brakes and attempted to turn to the right, but was not able to avoid the collision. The front passenger-side corner of Officer

**2.** Section 3105 of the Vehicle Code states, in pertinent part, that when responding to an emergency call, the driver of an emergency vehicle has certain privileges, one of which is being able to "[e]xceed the maximum speed limits so long as the driver does not endanger life or property." 75 Pa.C.S. § 3105. However, subsection (c) imposes conditions upon such privileges, stating they "shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department." 75 Pa.C.S. § 3105(c).

**3.** The testimony of Teddy Ryan, Sodders' girlfriend and passenger in the car at the time of the accident, corroborated that of Sodders. Steven Pustay, a licensed professional engineer, testified on behalf of Sodders as an expert in the field of accident reconstruction that at the time of impact Officer Fry's vehicle was traveling between 34 and 45 m.p.h. Mr. Pustay testified that it was his opinion, within a reasonable degree of certainty, that if Officer Fry was traveling at the posted speed limit of 25 m.p.h. when Sodders began making his turn he would have been able to avoid the accident.

Fry's vehicle impacted Sodders' vehicle, which then spun around and struck a utility pole. Both Officer Clark and Officer Czerpak continued driving on Midland Avenue and neither witnessed the accident.

On cross-examination, Officer Fry admitted, and his report of the incident reflected that he was travelling approximately 35 m.p.h. on Midland Avenue, in excess of the posted 25 m.p.h. speed limit. Officer Fry also admitted that he was not utilizing his lights or siren, that he was required to use his emergency lights and siren when responding to an emergency, and if he failed to do so he was not entitled to the privileges afforded emergency responders under Section 3105 of the Vehicle Code, including the privilege to exceed the posted speed limit. He also admitted there was no "sub-emergency or quasi emergency exception" to Section 3105 and, therefore, at the time of the accident he was operating his vehicle in violation of Section 3105 and 3362[4] of the Vehicle Code. (Reproduced Record (R.R.) at 129a).[5]

At the conclusion of the trial, both Sodders and the Borough requested that the trial court instruct the jury on the issue of negligence *per se*. Sodders pointed out that Officer Fry admittedly did not have on his lights or siren at the time of the accident. Therefore, Officer Fry was not entitled to the emergency responder privileges of Section 3105 of the Vehicle Code and was required to abide by the posted speed limit. Sodders argued the jury should be instructed that it must find Officer Fry negligent as a matter of law because he admitted that he violated Section 3362 of the Vehicle Code regarding maximum posted speed limits. The Borough, on the other hand, argued that Sodders had violated Section 3322 of the Vehicle Code[6] because he turned left at an intersection and failed to yield the right-of-way to Officer Fry's oncoming vehicle. The Borough requested a jury charge regarding negligence *per se*, specifically that if the jury found that Sodders violated Section 3322 of the Vehicle Code, then it had to find him negligent as a matter of law.

The trial court denied both requests and charged the jury on negligence, contributory negligence, factual cause, and the applicable sections of the Vehicle Code. The trial court instructed the jury, in pertinent part, as follows:

> A Pennsylvania Motor Vehicle law dictates the duty of care requires someone in the same situation as the plaintiff and the defendant driving the vehicles. In this situation, if you find that there was a violation of this state law, it may be used as a factor in finding negligence in this case. But you must determine not

---

4. Section 3362(a) states, in pertinent part, "[e]xcept when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this section or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits." 75 Pa.C.S. § 3362(a).

5. Officer Clark testified that he was travelling approximately 35 m.p.h. down Midland Avenue, he did not have on his lights or siren, and did not witness the accident. He stated he did not use his lights or siren because he did not want to let anyone at the disturbance call know he was coming. According to Officer Clark, it was standard police procedure not to use lights or siren in response to a disturbance call and, therefore, he was justified in slightly exceeding the speed limit.

6. That section provides, "[t]he driver of a vehicle intending to turn left within an intersection or into an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute a hazard." 75 Pa.C.S. § 3322.

only whether there was a violation of the Pennsylvania Motor Vehicle Code, but you must also determine whether that violation was a factual cause in causing the accident.

. . .

Of course, these are the sections that they claim are applicable in this case and are to be considered by you in determining whether the plaintiff violated this state law, and as a result was negligent, or that the plaintiff [sic] violated state law and he was negligent.

(R.R. at 293a, 295a).

Six questions were submitted to the jury; however, they only reached a verdict as to question number one—they found that Officer Fry was not negligent and, therefore, Sodders could not recover. The verdict form specifically stated that if the jury found that Officer Fry was not negligence, it should not answer any further questions and should return to the courtroom. Therefore, the jury did not reach the questions regarding factual cause, whether Sodders was contributorily negligent, and what percentage of causal negligence was attributable to both Sodders and Officer Fry.

Sodders filed a motion for a new trial arguing that the trial court erred in not directing a verdict on the issue of negligence, in failing to instruct the jury that Officer Fry was negligent *per se,* and that the jury's verdict was inconsistent and against the clear weight of the evidence. The trial court granted Sodders' motion for a new trial finding that it erred in not specifically instructing the jury on negligence *per se* as to both Sodders and Officer Fry. This appeal followed.[7]

On appeal, the Borough argues that the failure to charge the jury that Officer Fry was negligent *per se* did not cause Sodders any prejudice and the charge, as a whole, was correct. The Borough points out that "jury instructions must be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury in its deliberations." *Clack v. Department of Transportation,* 710 A.2d 148, 153 (Pa.Cmwlth.1998) (citing *Brill v. Systems Resources, Inc.,* 405 Pa.Super. 603, 592 A.2d 1377 (1991)). Jury instructions must be viewed as a whole and will not be reversed for an isolated inaccuracy; it must be demonstrated that the instructions caused prejudicial error. *Clack,* 710 A.2d at 153. Both parties presented evidence that the other party violated the Vehicle Code and was the factual cause of the accident. The jury was charged with determining whether Officer Fry was negligent, whether Sodders was negligent, what the proximate cause of the accident was, and whether Officer Fry was justified in exceeding the speed limit while performing his duties and responsibilities as a police officer. According to the Borough, the court's charge adequately and correctly set forth the law with respect to these issues and simplified the issues regarding violations of the Vehicle Code by both parties. Despite these argu-

7. In *Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116 (2000), the Supreme Court of Pennsylvania set forth a two-prong analysis for an appellate court's review of an order granting a new trial. First, we must examine the decision of the trial court and determine whether we agree with the determination that a mistake was made. *Id.* at 468, 756 A.2d at 1123. If so, then we must determine whether the trial court abused its discretion in ruling on the motion for a new trial. *Id.* "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion." *Id.* at 469, 756 A.2d at 1123.

ments, we agree with the trial court that an error occurred.

■ First, we must point out that the term negligence *per se* is somewhat of a misnomer as there is a distinct difference between negligence and negligence *per se*. In a typical injury case, the plaintiff must prove all of the following elements of negligence: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred. *Page v. City of Philadelphia*, 25 A.3d 471, 475 (Pa.Cmwlth.2011) (citing *Talarico v. Bonham*, 168 Pa.Cmwlth. 467, 650 A.2d 1192, 1195–96 (1994)). Negligence *per se* applies when an individual violates an applicable statute, regulation or ordinance designed to prevent a public harm. *Ford v. Philadelphia Housing Authority*, 848 A.2d 1038, 1050 n. 11 (Pa.Cmwlth.2004). Proof that an applicable statute exists and that the defendant violated that statute establishes only the first two elements of negligence—duty and breach. *Id.* "The law is well settled, however, that even having proven negligence *per se*, a plaintiff cannot recover unless it can be proven that such negligence is the 'proximate' or 'legal' cause of the injury." *Id.* (citing *Department of Public Welfare v. Hickey*, 136 Pa.Cmwlth. 223, 582 A.2d 734 (1990)). Given this distinction, the instructions provided to the jury in this case did not adequately and accurately reflect the law and, if anything, caused confusion on the issues.

The burden of proving compliance with Section 3105 of the Vehicle Code lies with the emergency vehicle operator. *Lahr v. City of York*, 972 A.2d 41 (Pa.Cmwlth. 2009). The Borough clearly did not meet this burden as Officer Fry admitted he was not utilizing his lights and siren, as required by Section 3105, at the time of

the accident. Despite the Borough's arguments to the contrary, there are no exceptions to Section 3105 for responding to "disturbance calls" rather than emergencies or for following "standard police procedure." Because Officer Fry did not qualify for the privileges found in Section 3105, he was required to abide by the posted speed limit. However, Officer Fry admitted he was exceeding the speed limit at the time of the accident in violation of Section 3362. Given these facts, Sodders clearly proved the existence of an applicable statute designed to prevent public harm, and that Officer Fry violated this statute; therefore, the jury should have been instructed on the issue of negligence *per se*.

■ The Borough argues that even if Officer Fry violated Section 3362 of the Vehicle Code, this does not necessarily mean he was negligent *per se*. While it is true that not every violation of a statute constitutes negligence *per se*, "[a] violation of the Vehicle Code that causes harm to another person is negligence *per se*." *Lahr*, 972 A.2d at 50. We addressed this issue recently in a similar case, holding that a police officer responding to an emergency call who did not qualify for the special privileges in Section 3105 was negligent *per se* for violating Section 3362 regarding maximum speed limits and Section 3308 regarding traveling the wrong way on a one-way street. *Id.* at 51. Our Supreme Court's discussion in *Shamnoski v. PG Energy*, 579 Pa. 652, 858 A.2d 589 (2004), while dicta, is instructive on this point:

Many statutes provide very general statements of what constitutes compliance or deviation, while others are quite specific. The Motor Vehicle Code provides a useful example of the distinction. Section 3361 of the Motor Vehicle Code contains the very general requirement

that operators of motor vehicles drive at a 'reasonable and prudent' speed.

. . .

What constitutes a reasonable and prudent speed is unspecified; since the statute essentially sets forth a traditional reasonable man standard, it would be impracticable to base a finding of negligence per se upon this provision. The very next section of the Code, however, sets forth the specific numeric limits on vehicle speed which every Pennsylvania driver must obey or be deemed at fault. Section 3362 speaks in absolutes; there is no room for the flexibility of the reasonable man standard. Exceeding the designated limit is, by statutory definition, unreasonable.

*Id.* at 672, 858 A.2d at 601 (internal citations omitted). *See also Jenkins v. Wolf,* 911 A.2d 568 (Pa.Super.2006) (violation of Section 3112 of the Vehicle Code, containing mandatory language that vehicular traffic shall yield the right-of-way to pedestrians lawfully within a crosswalk, is negligence per se). Therefore, we reject the Borough's argument.

The trial court's failure to instruct the jury regarding negligence per se resulted in an inaccurate description of the relative duties of care in this case. It also clearly caused Sodders harm because the jury found that Officer Fry was not negligent and never reached any other issues, most importantly the issue of factual causation. Even if both Officer Fry and Sodders were negligent per se, the jury would still have to reach the issue of factual causation, and potentially damages as well. The Borough's argument that the failure to give an instruction on negligence per se regarding Officer Fry was somehow "balanced out" because neither party received the benefit of the instruction is clearly untenable. The trial court admittedly committed an error because its charge to the jury did not accurately reflect the law regarding negligence per se or the duties of care. This error cannot be overcome by the mere fact that both parties were subject to the error. The Borough also argues that the jury's finding that Officer Fry was not negligent can be interpreted that it believed Officer Fry was justified in exceeding the speed limit or that he was not the factual cause of the accident and, therefore, a new trial is not warranted. However, we cannot possibly make such a leap from the jury's verdict.

We agree with the trial court that it was error not to instruct the jury on the issue of negligence per se as to both parties, and the trial court did not abuse its discretion in granting Sodders' motion for a new trial. Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 9th day of December, 2011, the order of the Court of Common Pleas of Beaver County, dated February 7, 2011, is affirmed.