**[J-19A-2019 and J-19B-2019] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| JOAN P. GROVE, | : | No. 31 WAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered January |
| | : | 12, 2018 at No. 132 CD 2017, |
| v. | : | reversing the Order of the Allegheny |
| | : | County Court of Common Pleas |
| | : | entered January 31, 2017 at No. GD |
| PORT AUTHORITY OF ALLEGHENY | : | 14-016095. |
| COUNTY, | : | |
| | : | ARGUED: April 9, 2019 |
| Appellee | : | |

| | | |
|---|---|---|
| JOAN P. GROVE, | : | No. 32 WAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered January |
| | : | 12, 2018 at No. 195 CD 2017, |
| v. | : | reversing the Order of the Allegheny |
| | : | County Court of Common Pleas |
| | : | entered January 31, 2017 at No. GD |
| PORT AUTHORITY OF ALLEGHENY | : | 14-016095. |
| COUNTY, | : | |
| | : | ARGUED: April 9, 2019 |
| Appellee | : | |

## DISSENTING OPINION

**JUSTICE WECHT**                              **DECIDED: OCTOBER 31, 2019**

I share Chief Justice Saylor's unease with the Majority's application of harmless error doctrine under the circumstances of this case. Harmlessness must be considered in terms of probabilities rather than illusory certainties; here, regarding the verdict a given jury might have returned had it been charged on negligence *per se*, and more generally

on the right-of-way laws as to which it specifically requested guidance.[1] Notably, even the standard governing challenges to jury instructions hints at the uncertainty of the prejudice inquiry, providing that a jury charge is adequate unless it "has a tendency to mislead or confuse rather than clarify a material issue." Maj. Op. at 15 (quoting *Stewart v. Motts*, 654 A.2d 535, 540 (Pa. 1995)). Certainty will not be found in response to a question framed in terms of tendencies. Where, as here, the record suggests that the slightest shift in the jury's assessment of the evidence very well could have led to a contrary result, this Court should not confidently declare that a trial judge's failure to instruct the jury on negligence *per se* did not mislead or confuse the jury.

Pennsylvania law requires the fact-finder to allocate "factual cause" among two or more parties whose respective conduct the jury has found breached their respective duties under the circumstances. *See* 42 Pa.C.S. § 7102. This obligation has been couched in terms of assessing the proportional role played by each party's "conduct" in bringing about the injury in question, as reflected in the Standard Suggested Jury Instruction for comparative negligence, *see* Pa.S.S.J.I. (Civ) 13.190, which the trial court provided without material alteration in this case. *See* N.T., 9/27/2016, at 299-300. However, this instruction does not by its terms cabin the scope of the jury's discretion to the extent of the Majority's holding.

Where the Majority goes astray is in its overly formalistic account of what comprises "conduct," a definition which the Majority assumes rather than develops. On the Majority's account, "conduct," as a functional synonym of "factual cause," must be understood in the bare one-foot-in-front-of-the-other sense, removing the broader human and legal context from the acts and events in question, a conclusion it shares with Judge Pellegrini's dissenting opinion below. *See* Maj. Op. at 17-18; *Grove v. Port Auth. of*

---

[1] *See* Diss. Op. at 2-3 (Saylor, C.J., dissenting).

*Allegheny Cty.*, 178 A.3d 239, 254 (Pa. Cmwlth. 2018) (Pellegrini, J., dissenting) ("In determining factual cause, it does not matter **how** a plaintiff breached a duty of care . . . because the factual cause of injury is the same." (emphasis in original)). But conduct cannot be measured in a vacuum, and I believe that most lay jurors understand conduct to embody not just some automatous sequence of events that preceded and caused harm, but also to reflect qualitative considerations.

Such a qualitative aspect is essential to common definitions of conduct. For example, one dictionary defines conduct as "[t]he way a person acts, esp. morally or ethically," and cites "behavior" as a synonym, a word that also, manifestly, has a qualitative overtone in common usage. *Conduct*, AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed.).[2] Another dictionary similarly describes conduct in its "leading sense" as the "[m]anner of conducting oneself or one's life; behaviour; usually with more or less reference to its moral quality (good or bad)," citing such illustrative examples as "[t]he clergy . . . claimed the privileges of saints, while their conduct fell below the standard of that of ordinary men." *Conduct*, THE COMPACT OXFORD ENGLISH DICTIONARY (2d ed.). If "conduct" appears in a jury instruction without a clear limiting definition, we must expect lay jurors to understand that word in its common sense, integrating its qualitative aspect into their deliberations. *Cf. Boyde v. California*, 494 U.S. 370, 380-81 (1990) ("Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might."). Consequently, a jury may find conduct that flouts the law more blameworthy than conduct that merely reflects carelessness—especially where the law in question serves to protect not only the actor but others.

---

[2] The same dictionary describes behavior's synonyms as follows: "*behavior, conduct, deportment*. These nouns all pertain to a person's actions as they constitute a means of evaluation by others. . . . *Conduct* applies to actions considered from the standpoint of morality and ethics: '*Life, not the parson, teaches conduct*' (Oliver Wendell Holmes, Jr.)." *Behavior*, AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed.).

The Majority's account can be correct only if conduct is treated (for present purposes) as a legal term of art wholly divorced from its common usage. Even doing so, however, does not exclude conduct's qualitative undertone. The leading legal dictionary defines conduct as "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds." *Conduct*, BLACK'S LAW DICTIONARY (10th ed.). Thus, it strains credulity to propose that the manner in which Ms. Grove behaved in this case for purposes of allocation of responsibility must be described restrictively as the mere act of leaving the sidewalk or a crosswalk, precluding the jury from considering those acts in their full context as departures from specific legal obligations.

This dubious proposition haunts the Majority's analysis. And the Majority fails to identify authority to support such a formalistic approach. Indeed, setting aside its recitation of the lower courts' analyses and the parties' arguments, the Majority cites only Judge Pellegrini's dissent in this case and *Sodders v. Fry*, 32 A.3d 882, 887 (Pa. Cmwlth. 2011). The Majority relies upon *Sodders* for the proposition that, when a jury finds that a party violated a statute, it may conclude that the party had a commensurate duty of care and breached it, but that, "even having proven negligence *per se*, a plaintiff cannot recover unless it can be proven that such negligence is the 'proximate' or 'legal' cause of the injury." Maj. Op. at 17 (quoting *Sodders*, 32 A.3d at 887). While that accurately states the law, it does not explain why "such negligence," or the apportionment of two or more parties' comparative responsibility, cannot or should not be informed by qualitative considerations such as whether a given party's conduct violated statutory obligations.

The Commonwealth Court dissent's reasoning, while more expansive, suffers from the same deficiency. After reviewing the standard jury instructions employed in this case,

the dissent below concluded that, "[i]n determining factual cause, it does not matter **how** a plaintiff breached a duty of care (*e.g.*, negligence *per se* or just plain negligence) because the factual cause of injury is the same—here, negligently walking on Sixth Avenue." *Grove*, 178 A.3d at 254 (Pellegrini, J., dissenting) (emphasis in original). But just saying that does not make it so, and nothing about the jury charge given in this case compelled the jury to apply such a restrictive standard. In criticizing what it characterized as the court's "conclusion that there are 'no limitations' on what the jury can consider, including the number and type of specific duties violated," the dissent below argued that this absence of limitations suggested that, "if conduct can be considered a breach of duty under both negligence-in-fact and negligence *per se*, the factual cause of the injuries is somehow increased even though the underlying conduct is the same." *Id.* This formulation coheres only if we take on faith that "conduct" entails no qualitative aspect, a conclusion in search of a rationale and in tension with the word's common definition.

It is not that the factual cause is "increased," whatever that might mean. It is that the cause is cast according to the full context of the act or omission in question. It may be true that stepping off the curb was among the causes of Ms. Grove's harm. But that does not exclude the possibility that it also is true that Ms. Grove's violation of one or more laws caused her harm. Setting aside negligence *per se*, as such, it is literally true to say that a person who was struck by a bus after sprinting into the street from a dark doorway and a person who was struck after simply stepping off the curb at walking speed without checking for oncoming traffic both were injured as a consequence of stepping into the street and the path of an oncoming bus. If the evidence at trial created a dispute as to which characterization was more accurate, I suspect this Court would not find it harmless error if a judge instructed the jury to disregard the abruptness and speed of the plaintiff's movements moments before entering the street and consider only the fact that

plaintiff entered the street as a bare proposition. Similarly, reasonable jurors may view those who are injured after breaking laws aimed at ensuring their safety and that of others in a light less flattering than they view those who simply fail to exercise reasonable care for their own safety.

Notably, the other terminology employed by the trial court in its jury charge failed to clarify any limitation on what constitutes "conduct." In particular, the court principally relied upon the phrase "percentage of negligence" in explaining the jury's task in allocating responsibility. Thus, echoing the standard instruction, the trial court explained to the jury, "If you decide that both Joan Grove and Port Authority of Allegheny County were negligent and that the negligence of both parties was a factual cause of plaintiff's injuries, you must then decide how much each party's negligence contributed to the plaintiff's injury." N.T., 9/27/2016, at 299-300. Absent from this formulation is any suggestion that the jury should omit disregard for the law from its deliberations in allocating responsibility.[3]

We do not ask jurors to check their humanity at the courthouse door, but rather count on it to soften the law's hard edges with the values of the community at large. This is not to say that jurors must not adhere to the law as the court describes it. But we must not lose sight of the interests served by our tort system, which allows recovery only by injured parties whose own role in their harm, as assessed by a jury, does not exceed that of those upon whom they seek to impose liability. Ultimately, assessing comparative negligence requires a jury to reach consensus regarding the relative blameworthiness of the parties who played a causative role in the underlying harm, and determining blameworthiness necessarily entails qualitative judgments. A foolish mistake may

---

[3]     Indeed, in the wake of this case, it may be advisable to amend the standard instruction to more carefully describe the constraints the Majority now has imposed upon a jury's deliberations with regard to the allocation of responsibility.

suggest an error of judgment, while a similar action that flouts the law may reflect disregard for legal prescriptions that embody the community's views of what best serves public safety.

I would not ask jurors to trade the good judgment they employ when evaluating behavior in their day-to-day lives for an overly formalistic substitute based upon semantic distinctions with no clear legal warrant. Here, the jurors, denied the opportunity they explicitly sought to measure Ms. Grove's behavior against her legal obligations (and indeed instructed in clear terms by the court that those obligations were immaterial to their deliberations), concluded that Ms. Grove's share of responsibility for her harm was a mere scintilla short of precluding recovery entirely. Under these circumstances, and notwithstanding the jury's finding that Ms. Grove was negligent, it is unrealistic to reject out of hand what seems to me more than a mere reasonable probability that the jury would have found her more blameworthy for purposes of allocating responsibility for her harm had it been given the opportunity to measure her behavior against laws that she allegedly violated, an opportunity the jury explicitly sought and the trial court denied. *See* Diss. Op. at 2 (Saylor, C.J., dissenting). Consequently, I respectfully dissent from the Majority's conclusion that the trial court's error in this regard was harmless.