**Susan and Francis LAHR**

v.

**CITY OF YORK, York City Police Department and Barry L. Bloss, Jr., Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 8, 2008.

Decided April 9, 2009.

Reargument Denied En Banc June 1, 2009.

Thomas B. Sponaugle, York, for appellants.

Farley G. Holt, York, for appellees.

BEFORE: McGINLEY, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

City of York Police Officer Barry L. Bloss, Jr. (Officer), the York City Police Department (Department) and the City of York (City) (collectively, Appellants) appeal from the order of the Court of Common Pleas of York County dated March 13, 2008, granting Appellees, Susan Lahr (Driver) and Francis Lahr, a new trial limited to the issue of contributory negligence. We affirm.

Driver filed suit alleging personal injuries sustained when Officer exceeded the speed limit while operating a police vehicle (car) in the wrong direction on a one-way street that collided with Driver's vehicle (van) in an intersection. A jury trial was held in the Common Pleas Court of York County, Pennsylvania (trial court) resulting in a verdict that Officer was not negligent. The trial court granted Driver's post-trial motion for a new trial limited to the issue of contributory negligence. Appellants appeal. We affirm as modified.

On May 10, 2003, shortly before eight o'clock A.M. Driver, a thirty-five-year-old mother of three teenage girls, was operating her van on her way to work traveling west on East Maple Street (Maple Street) near its intersection with Duke Street with her windows down and her radio on.[1] As Driver approached the stop sign facing her before reaching Duke Street, she noticed an oncoming police cruiser across the intersection in the next block of Maple Street, going east, the wrong way. She may have seen the emergency lights on that cruiser, but heard no siren. R.R. 67a,

1. East Maple Street is a one-way street with one traveling lane where the proper direction of traffic is west to east. South Duke Street is also a one-way street where the proper direction of traffic is south to north.

143a. The police cruiser turned to its right, causing him to travel south, the wrong way, on Duke Street. Driver looked to her left (where traffic should have been approaching her from Duke Street) and watched the police cruiser until it was out of sight. R.R. 67a.

Driver testified that she stopped at Duke Street but because of vehicles parked to her left on Duke Street, she was unable to see northbound traffic from Duke Street until she was in the intersection. She had to keep inching out into the intersection a little bit at a time in order to see the oncoming traffic, in order to safely transverse the intersection. She kept looking to the left to see if there was any traffic coming. She heard no siren. R.R. 70a, 71a. When she saw that it was clear, she proceeded through the intersection slowly. Driver stated that she had traversed this intersection daily for three years on her way to work and did not look to her right because Duke Street, being a one-way street, only permitted traffic from her left. At this point, Officer's vehicle, traveling south on Duke Street, came from Driver's right and struck her van before she cleared the intersection.

Officer testified that while on duty that same morning, he was operating a police car in a southerly direction on South Duke Street (Duke Street), responding to an emergency call near the old Courthouse in the City of York, an area with many one-way streets. R.R. 241a, 251a. He was in pursuit of a suspected gunman, had the emergency lights activated and was using the siren intermittently at intersections. He admitted that he was exceeding the posted speed limit (by going thirty miles per hour) and was traveling the wrong way

on a one-way street. R.R. 281a, 282a. Officer saw Driver continuously looking to her left, applied the brakes and his vehicle struck the van close to the rear axle area or tire on the passenger side. Officer admitted that if he were going slower it was possible that he could have stopped in time and avoided the accident. R.R. 288a. Officer maintained that he was traveling 10 to 15 miles per hour at impact. There was no evidence of the Officer's vehicle slowing or stopping, such as skid marks, before impact. *Id.*

An eye witness to the events that morning, Ms. Cheri Brown, testified that she heard police sirens coming from many different directions, looked in all directions to see what was happening, and saw two police cars on Duke Street, one traveling in the correct direction and one traveling in the wrong direction on the one-way street. She saw the Officer's car to her right, with its lights and siren on, traveling in the wrong direction on Duke Street. She estimated the Officer's car to be traveling at approximately 40 to 50 miles per hour. It did not appear as if the Officer's car had a chance to stop before impact. R.R. 576a.

Witness Ismel Castillo testified that he saw two police cars that morning. The first police car had its lights and siren on; the second one had no siren on and he could not remember if it had its lights on. R.R. 165a.

The trial court instructed the jury on negligence, contributory negligence, the necessity for any negligence to be the factual cause of the injuries to Driver and the applicable sections of the Motor Vehicle Code (Vehicle Code) including the emergency vehicle doctrine.[2] R.R. 488a, 489a.

---

**2.** Section 3308 of the Vehicle Code governs directional requirements:

(b) Driving on one-way roadway.—Upon a roadway designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic-control devices.

Under the emergency vehicle doctrine, the driver of an emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, may exercise special privileges to exceed speed limits and disregard directional regulations, subject to the conditions stated in Section 3105 of the Vehicle Code, 75 Pa.C.S. § 3105.[3]

The trial court also instructed the jury to decide whether one or both individuals, Officer and/or Driver, were negligent *per se* by violating any of the statutes referred to in the jury's instructions that defined the duty of care of the various individuals involved in this particular incident. R.R. 490a.

The trial court refused Driver's request to instruct the jury that the operator of an emergency vehicle claiming an exemption from the normal rules of the road, has the burden of proving that he met each applicable condition set forth in the Vehicle Code. The trial court also refused Driver's requested instruction that Appellants failed to prove that Officer had met the conditions necessary to invoking the special privileges regarding speed and directional movement.[4]

The jury rendered a verdict that Officer was not negligent.[5] The trial court summarily denied Driver's oral motion for judgment notwithstanding the verdict (J.N.O.V.). The trial court heard Driver's post-trial motions on October 7, 2007. Driver requested the trial court: a) to order a new trial pursuant to Pennsylvania Rule of Civil Procedure (Pa. R.C.P.) No. 227.1; b) to set aside the jury verdict; c) to order and direct a new trial; d) to order and direct that the trial be limited to the issues of Driver's contributory negligence and damages; and e) to order any all other relief deemed just and appropriate.[6]

---

75 Pa.C.S. § 3362 authorizes and governs the speed limit:
(a) General Rule—... [N]o person shall drive a vehicle at a speed in excess of the following maximum limits:
\* \* \*
(1.2) 25 miles per hour in a residence district....

3. Section 3105 of the Vehicle Code, 75 Pa. C.S. § 3105, states in pertinent part as follows:
(a) General rule.—The driver of an emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law ... or other emergency call, may exercise the privileges set forth in this section, but subject to the conditions stated in this section.
(b) Exercise of special privileges.—The driver of an emergency vehicle may:
\* \* \*
(3) Exceed the maximum speed limits so long as the driver does not endanger life or property....
(4) Disregard regulations governing direction of movement, overtaking vehicles or turning in specified directions.
(c) Audible and visual signals required.—The privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department. (Emphasis added).
\* \* \*
(e) Exercise of care.—This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons.
The trial court did not explain to the jury what the departmental regulations consisted of or how they were relevant.

4. The trial court also limited the jury to consider only the negligence of the Officer with the understanding that the liability of the other parties would be sorted out after the verdict. R.R. 506a.

5. After answering the first question on the verdict sheet regarding Officer's negligence in the negative, the jury, as instructed, did not answer the remaining questions on proximate cause, contributory negligence, damages, etc.

6. Pa. R.C.P. No. 227.1 states in pertinent part:

On March 13, 2008, the trial court issued an opinion in support of its order granting a new trial limited to the issue of contributory negligence, stating that it erred in not granting Driver's request for a directed verdict. The trial court concluded that Appellants were guilty of negligence *per se* as a matter of law for failure to sustain their burden of proving that the siren and/or lights of Officer's vehicle meet the audible and visual standards of the Pennsylvania Department of Transportation (PennDot) regulations. The trial court determined that the special privileges of Section 3105 of the Vehicle Code, entitle an emergency vehicle operator to exceed the speed limit and disregard the directional provisions only if the signals on the emergency vehicle meet all of the qualifying conditions. The trial court reviewed its earlier rulings and concluded that an error had occurred with respect to its failure to enter a directed verdict because of negligence *per se* by the Appellants and that such mistake provided a sufficient basis for granting a new trial. The Appellants appealed.

 The purpose of post-trial motions is to give the trial court an opportunity to review and reconsider its earlier rulings and correct its own errors that may have occurred at the trial court level before an appeal is taken. *Soderberg v. Weisel*, 455 Pa.Super. 158, 687 A.2d 839 (1997).

 The Supreme Court has set forth a two-pronged analysis for the appellate court's review of a new trial order. First, the appellate court must examine the decision of the trial court to see if it agrees that it made a mistake. Then, if it determines that a mistake was made during the trial, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial. *Harman v. Borah*, 562 Pa. 455, 468, 756 A.2d 1116, 1123 (2000). Post-trial motions should be granted only where there is clear error of some kind, whereby someone has suffered prejudice by that error. *Id.* When considering a motion for J.N.O.V., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising from the evidence and any conflict in the evidence must be resolved in his favor. *Kaplan v. Kaplan*, 404 Pa. 147, 171 A.2d 166 (1961).

The trial court determined that the Vehicle Code permits the driver of an emergency vehicle to exceed the maximum speed limit so long as the driver does not endanger life or property and may disregard regulations governing direction of movement. These special privileges only apply, however, when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by PennDot. 67 Pa.Code § 173.[7] However, even

---

(a) After trial and upon the written Motion for Post Trial Relief filed by any party, the court may

 (1) order a new trial as to all or any of the issues....

7. 67 Pa.Code § 173 states in pertinent part:

173.1. Purpose.

 This chapter pertains to the nature, display, color, minimum performance standards and configuration of flashing, oscillating or revolving lights that are

permissible for display by emergency and authorized vehicles.

 * * *

173.3. Display requirements.

(a) *Color.* White, clear, red, blue, amber or yellow are the only colors permitted for use in flashing or revolving lights.

 (1) *Chromaticity coordinates.* A flashing, revolving or oscillating light must meet or exceed the Chromaticity Coordinates, CIE 1931, Standard Colorimetric System as provided in SAE Standard J578d, Color Specification for Electrical Signal Lighting De-

these special privileges do not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons. R.R. 489a, 490a; 75 Pa.C.S. § 3105(e). The trial court reasoned that if Appellants are going to invoke the part of the statute that absolves them from liability in emergencies, that Appellants should be held to prove all the standards that they are required to follow in order to invoke such affirmative defenses permitted in the statute.

■ Appellants first argue that there was sufficient evidence for a jury to find that Officer was confronted with a sudden emergency not of his own making. Officer was not negligent. Therefore, Driver's injuries resulted from the mere happening of an accident. Since Driver did not see the police car or its lights prior to the accident, PennDot's regulations are irrelevant. Appellant's argument would prevail if PennDot's regulations are irrelevant, because Officer would have a special privilege which would insulate his driving conduct from violating the speed and directional requirements elsewhere in the statute. The pertinent question is, therefore, whether Appellants proved compliance with the terms of Section 3105 of the Vehicle Code and for that reason qualify for the special privileges it granted to exceed the maximum speed restriction of Sections 3362 and to disregard the one-way mandate of Section 3308 of the Vehicle Code.

Appellants admit that there are mandatory requirements in PennDot's regulations relating to the chromaticity coordinates of lights but claim that the Officer's testimony supported those requirements. Appellants argue that they proved compliance with the regulations because Officer testified that he reviewed the regulations at police headquarters, that they only referred to the size, shape and dimensions of the lights and that the manner in which he used the siren and lights was in compliance. Officer did not testify, however, that the police vehicle complied with PennDot's regulations on such things as the chromaticity of the lights. Appellants seemingly ignore the fact that the use of the word "departmental" in the statute refers to the Pennsylvania Department of Transportation and not the City of York Police Department. Further, the trial court found that there was no evidence presented with respect to the chromaticity coordinates of the lights. Appellants do not cite to any reference of such evidence in the record and we have been unable to find any proof that such PennDot regulations were met.

■ Appellants also argue that statutory construction principles require the court to find that the legislative intent was that the conditions precedent are fulfilled once the audible and visual signals are in use in order to qualify for the privilege to disobey the identified provisions of the Vehicle Code. However, it is not necessary to ponder the legislative intent when, as here, the words and phrases of the statute are clear and free from ambiguity and may be construed according to their plain meaning. *Commonwealth v. Gosselin*, 861 A.2d 996, 999 (Pa.Super.2004). Assuming, arguendo, that there is an ambiguity, Appellants' argument still fails. Appellants argue that Section 3105 of the Vehicle Code creates the privilege when the emergency driver is "making use of the audible and visual signals." Thus, Appellants are not required to prove compliance with departmental regulations after proving such use.

vices, September 1978 or subsequent SAE Standards. This requirement does not apply to flashing headlamp systems.

We agree with the trial court, however, that it is significant that the phrase "meeting the requirements and standards" set forth in the Vehicle Code, immediately follows the reference to making use of the signals. The phrase "meeting the regulations" does not qualify the phrase "making use" of the signals. In fact, the reverse is true. The absence of a comma between "signals" and "meeting" strengthens this construction.

█ Appellants then argue that the trial court disregarded the legislative intent in enacting Section 3105 of the Vehicle Code because its interpretation would require the driver of an emergency vehicle to prove compliance with technical regulations to avoid liability in a civil action. Appellants contend that Section 3105(c) of the Vehicle Code creates the privileges as long as the emergency driver is making use of the audible and visual signals so that he is not required to prove compliance with directional and speed regulations. The statute clearly requires the driver of an emergency vehicle responding to an emergency call to meet several conditions in order to invoke the special privileges. First, there must be an emergency vehicle involved. Second, the operator must be "making use" of audible and visual signals. Third, the signals that are in use must meet the requirements and standards of the department. Otherwise, the statutory language in Section 3105 of the Vehicle Code which states that "privileges . . . shall apply only when the vehicle is . . . meeting the requirements and standards set forth in regulations adopted by the department" would be rendered useless.

█ Appellants rely on *Frazier v. Commonwealth*, 845 A.2d 253 (Pa.Cmwlth. 2004). In *Frazier*, the plaintiffs' decedent was killed while fleeing from a state trooper in hot pursuit. The issue was whether the audio-visual requirements of the emergency vehicle doctrine created a cause of action based on the trooper's duty to the decedent. This court held that the doctrine set forth in Section 3105 did not create a statutory duty to the decedent where no common law duty to a fleeing motorist previously existed. The instant case is distinguishable from *Frazier*. Here, Appellants, not Driver, are invoking the privilege afforded by the Vehicle Code in order to avoid a duty to obey speed and directional signals by shielding themselves from liability. In *Frazier*, the plaintiffs were trying to use the statute to create a duty where none existed at common law. Instead, *Frazier* basically held that the statute is a shield for the operators of emergency vehicles and not a sword for litigation. Here, the special privileges in the statute are expressly subject to definite qualifying conditions before it becomes operative to shield someone invoking its protection:

> The privilege granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department.

75 Pa.C.S. § 3105(c). With respect to the visual signals,[8] the trial court, therefore,

---

8. Appellants argue that there are no PennDot regulations regarding the sirens and therefore, the trial court's reasoning becomes moot. We agree regarding the audible signals only. Although the trial court states that there were departmental regulations regarding the physical attributes of the audible and visual signals and concludes that there was no proof of them, PennDot's regulations apparently set forth specifications for visual signals only. 67 Pa.Code § 173.3. There is no prerequisite that the audible signal meet any departmental requirements, however, because the phrase "meeting the requirements" etc.

did correctly interpret the Vehicle Code by placing the burden of compliance with Section 3105 on the emergency vehicle operator. Appellants are attempting to use the statute to acquire the privilege without complying with the express terms of the statute that created it. Since Appellants did not qualify for the privilege under the terms of the statute that created it, they must abide by the same consequences as the ordinary vehicle operator who violates the Vehicle Code by speeding the wrong way on a one-way street and causes an accident. Sections 3362 and 3308 of the Vehicle Code set forth obligations of drivers with respect to speed and one-way streets and thereby create the duty here that is owed to the other travelers on the highway. A violation of the Vehicle Code that causes harm to another person is negligence *per se.*

Appellants further argue that Driver failed to establish that the trial court's original ruling, summarily denying a new trial, prejudiced her and that the jury's verdict that Officer was not negligent reflects that it found that a privilege did exist. Thus, the trial court did not make a mistake when it denied Driver's motion for a directed verdict. On the contrary, the trial court, by reversing itself, obviously found that Driver was prejudiced for the very reason that the directed verdict was denied and the issue of negligence was submitted to the jury when Officer was negligent *per se* by not being entitled to

the special privileges of disobeying certain portions of the Vehicle Code.

Appellants also argue that the jury's verdict indicates that Driver failed to meet her burden of proof that Officer violated the statute. However, Officer admitted violating the speed limit provision and the one-way directional provision of the Vehicle Code, which are the only facts relevant to proving Officer's violation of the statute. Since the relevant facts are no longer considered to be in dispute, the only remaining question is one of law concerning the entitlement to the special privileges, which question requires an interpretation of the court, not the jury. *Kaplan.*

■■■ Alternatively, Appellants argue that even if there was a violation of Section 3105 of the Vehicle Code, that such violation does not support a finding that Officer was negligent *per se.* Appellants contend that Driver did not establish that the violation of the statute caused her harm because technical regulations regarding color, etc., are useless unless the person in the class which the statute intended to be protected, is exercising caution under the circumstances. Appellants fail to recognize, however, that each party is relying on different provisions of the Vehicle Code for different purposes. The basis of the negligence *per se* determination is the admitted violations of the speeding and directional provisions in Sections 3362 and 3308 of the Vehicle Code, respectively. Driver is within the class of persons the speeding and

applies only to "visual signals" which immediately precedes that phrase. Thus, the wording of Section 3105(c) indicates that the General assembly was aware that the department had no regulations on audible signals and did not intend to mandate regulations in that area. The trial court's impression that there were regulations regarding sirens is harmless error because Appellants still failed to offer any proof of their compliance with the extensive regulations on visual signals regarding

color, including chromaticity, visibility, flash rate, etc., upon which latter regulations the trial court relied.

The trial court's impression that there were regulations regarding sirens is harmless error because Appellants still failed to offer any proof of their compliance with the extensive regulations on visual signals regarding color, including chromaticity, visibility, flash rate, etc., upon which latter regulations the trial court relied.

directional provisions in the Vehicle Code intended to protect. Conversely, Appellants, not Driver, are the ones relying upon Section 3105 of the Vehicle Code to shield Officer from liability for those violations of the speed and directional provisions. Appellants, therefore, must carry the burden of qualifying for the special privileges of Section 3105 to disobey certain portions of the Vehicle Code that are violated if not found privileged. Appellants did not sustain that burden.

 Appellants argue that the departmental regulations are irrelevant because Driver never looked in the direction of the police car before proceeding across the intersection and never gave herself the opportunity to see the Officer's vehicle and its lights before impact. Appellants further argue that compliance with PennDot regulations regarding the lights then becomes irrelevant because if the Driver did not look in the direction of the lights, then it would not matter whether or not the lights were within the statutorily required chromaticity, etc. We disagree. Appellants would require Driver to look the wrong way down a one-way street. Driver is not required to anticipate the negligence of another vehicle operator. *Smith v. Port Authority Transit,* 257 Pa.Super. 66, 390 A.2d 249 (1978).

 Officer's emergency vehicle did not qualify for the special privileges in Section 3105 to disregard the speed and directional mandates of Sections 3362 and 3308 of the Vehicle Code. Having proven no privilege, Officer violated the speeding and directional provisions of the Vehicle Code. 75 Pa.C.S. §§ 3362 and 3308. Such violations of the statute are negligence *per se.* The next question, then, is whether the negligence *per se* was also the proximate cause of the accident.

 The Officer's vehicle violated the Vehicle Code by speeding the wrong way down a one-way street. Violation of a statute may be negligence *per se* and liability may be based on such negligence, but only if such negligence is the proximate and efficient cause of the accident. *Kaplan.* Such violations of the statute caused the harm that the statute was intended to protect. Ordinarily, the question of whether the negligence of a defendant is the proximate cause of the accident is for the fact-finder, but where the relevant facts are not in dispute and the remoteness of the causal connection between defendant's negligence and plaintiff's injury clearly appears from the evidence, the question becomes one of law and, as such, is within the scope of appellate review. *Id.*

The driver of an emergency vehicle qualifies for special privileges to disregard speed and directional requirements of the Vehicle Code when the signals are in compliance with PennDot regulations. 75 Pa. C.S. § 3105. Further, even if the emergency vehicle qualifies for that privilege, the driver must still exercise due care for the safety of all persons. Here, there was no proof that Appellants' vehicle met the qualifications entitling Officer to have the special privileges to disregard the traffic laws. Appellants did not prove compliance with PennDot's regulations governing visual signals, such as, the chromaticity of the lights on the Officer's vehicle in order for the driver of the emergency vehicle to be entitled to special privileges to exceed the speed limit and disregard directional mandates. Officer operated the police vehicle in violation of the Vehicle Code and caused the accident. Such conduct was negligence *per se.* We agree with the trial court that it was error not to direct a verdict for Driver.

 Since we have agreed with the trial court that it made a mistake during

trial, our next step in reviewing this appeal is to analyze whether the trial court abused its discretion in ruling on the motion for a new trial. *Kaplan*. The decision to order a new trial is one that lies within the discretion of the trial court. *Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 625 A.2d 1181 (1993). When determining whether the trial court abused its discretion, the appellate court must confine itself to the scope of review. Where, as here, the trial court has provided a specific reason for its ruling on a request for a new trial, and it is clear that the trial court based its decision on that reason, the appellate court must apply a narrow scope of review and may only reverse the decision of the trial court if it finds no basis on the record to support the reason of the trial court. *Harman*. Absent a clear abuse of discretion, an appellate court will not interfere with a trial court's authority to grant or deny a new trial. *Id.*

Discretion is abused when a trial court's decision represents not merely an error of judgment but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Coker*, at 445, 625 A.2d at 1185. A new trial should not be granted because of a mere conflict of testimony because the trial judge, hearing the same facts, would have arrived at a different conclusion than the jury. A new trial should only be granted when the jury's verdict shocks the sense of justice of the reviewing body.

Appellants argue that the trial court invaded the province of the jury by supplanting the jury's fact finding function with its own version of conflicting facts but Appellants fail to cite a single example in the record to support their bald allegations.

Appellants further argue that the trial court abused its discretion when it vacated an adequately charged jury award returning a reasoned verdict. However, there is no evidence that Appellants proved that the signals of the emergency vehicle met the regulations of PennDot. There was no privilege, therefore, to operate the police vehicle in violation of the Vehicle Code. Without such a privilege, the evidence clearly shows by Officer's own admissions, that he violated the statute and that such violations were the cause of Driver's injuries. The negligence *per se* of the Officer causing the accident was sufficient to warrant the trial judge to direct a verdict for Driver on Officer's negligence before submitting the issues to the jury. The relevant facts are not in dispute and the remoteness of the causal connection between Officer's negligence and Driver's injuries clearly appears from the evidence. The question of proximate cause, therefore, was a question of law for the determination of the trial court, not the jury. *Kaplan*. The trial court realized that it erred by refusing Driver's request for a directed verdict. It is the intent of post trial motions to give the trial court the opportunity to review, reconsider and correct its own error at the trial level before an appeal is taken. *Soderberg*.

Appellants also argue that the trial court abused its discretion when it limited the scope of the new trial to contributory negligence and damages without entering an order for a new trial altogether. Although the trial court omitted damages from the scope of its new trial order, such omission is not reversible error and is correctable with a slight modification hereinafter set forth.

In this instance, a review of the record supports the trial court's determination that there was no evidence in the record to prove compliance with the required regula-

tions on the visual signals in order for Appellants to meet the statutory requirement entitling them to obtain the cloak of privilege in this emergency. Without such privileges, Officer violated the speeding and directional provisions of the Vehicle Code and was guilty of negligence *per se*, which caused the accident in question. The trial court, therefore, did not abuse its discretion in granting a new trial.

Consequently, we affirm the order of the trial court and remand with instructions to proceed with a new trial to determine contributory negligence and, if appropriate, damages.

### ORDER

AND NOW, this 9th day of April, 2009, we affirm the order of the Court of Common Pleas of York County in the above-captioned matter, and remand to it to proceed with a new trial to determine contributory negligence and damages.

Jurisdiction relinquished.